**<u>Exhibit A</u>**

**(Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:

STAR ISLAND VACATION
OWNERSHIP ASSOCIATION, INC.,[1]

                    Debtor.

_____/

CASE NO. 6:25-bk-07207

CHAPTER 11

SUBCHAPTER V

**ORDER (I) (A) APPROVING AUCTION AND BIDDING PROCEDURES, (B)
SCHEDULING BID DEADLINES AND AN AUCTION, AND (C) APPROVING THE
FORM AND MANNER OF NOTICE THEREOF, AND (II) (A) AUTHORIZING THE
SALE OF ASSETS AND (B) GRANTING RELATED RELIEF**

**THIS MATTER** came before the Court on [_____], 2026 at [_____] [a.m.][p.m.]
for hearing (the "Hearing") upon the *Motion for Entry of an Order (I) (A) Approving Auction and
Bidding Procedures, (B) Scheduling Bid Deadlines and an Auction, and (C) Approving the Form
and Manner of Notice Thereof, and (II) (A) Authorizing the Sale of Assets and (B) Granting Related
Relief* (the "Motion") (Doc. No. [____]),[2] filed by Star Island Vacation Ownership Association, Inc.
(the "Debtor"). In the Motion, Debtor requests the Court enter an order: (a) approving the proposed
marketing, auction, and bidding procedures (the "Bidding Procedures"), by which Debtor will
solicit and select the highest or otherwise best offer for the sale or other transaction (the "Sale
Transaction") of the Property; (b) establishing certain dates, deadlines and procedures related
thereto and scheduling an auction, if any, for the Sale Transaction (the "Auction"); (c) approving
the manner of notice of the Auction and sale approval process including, if necessary, a sale

---

[1] The last four digits of Debtor's tax identification number are 6210. Debtor's primary place of business is 5000
Avenue of the Stars, Kissimmee, Florida, 34746.
[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

hearing (the "Sale Hearing") as may be necessary; (d) authorizing the Sale Transaction; and (e) granting related relief, all as more fully set forth in the Motion and Exhibit 1 attached thereto.

Having reviewed the Motion, and having considered the representations of those present at the Hearing, and for those reasons stated on the record, the Court finds: (1) the relief requested in the Motion is in the best interests of Debtor's estate, its creditors, and other parties in interest; and (2) Debtor's notice of the Motion was appropriate under the circumstances and no other notice need be provided. Accordingly, it is

**ORDERED**:

1.      The Motion (Doc. No. [____]) is **GRANTED** as set forth herein.

2.      Debtor has articulated good and sufficient reasons for authorizing and approving the Bidding Procedures, which are fair, reasonable, and appropriate under the circumstances and designed to maximize the recovery on, and realizable value of Debtor's assets.

3.      Debtor's proposed notice of the Motion and the Hearing was (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (iii) adequate and sufficient under the circumstances of this Chapter 11 Case, and no other or further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to all interested persons and entities.

4.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled prior to or at the Hearing are overruled.

**V.      Important Dates and Deadlines.**

5.      **Stalking Horse Deadline.** January 30, 2026, at 5:00 p.m., prevailing Eastern Time, is the deadline by which Debtor may, but is not required to, designate a received Qualified Bid as

a Stalking Horse Bid for the Property. Debtor shall file any Notice of Stalking Horse Bidder within one (1) business day after executing any applicable Stalking Horse Agreement.

6.      **Bid Deadline for the Property.** March 30, 2026, at 5:00 p.m., prevailing Eastern Time, is the deadline by which all Qualified Bids must be **actually received** by the parties specified in the Bidding Procedures.

7.      **Auction.** The Auction for the Property, if needed, will be April 9, 2026, at 10:00 a.m. prevailing Eastern Time, which date and time may be extended by Debtor upon written notice to the Court. The Auction will be conducted virtually via Zoom. Only Debtor, Qualified Bidders, the U.S. Trustee, the Subchapter V Trustee, and any other parties as Debtor may determine to include in its reasonable discretion, in each case, along with the representatives and advisors, shall be entitled to attend the Auction, and only Qualified Bidders will be entitled to make Bids at the Auction. For the avoidance of doubt, only Association Members that submit Section 363(i) Bids that constitute Qualified Bids will be entitled to participate in and make further Bids at the Auction. Debtor shall send written notice of the date, time, and link for the Auction to the Qualified Bidders, the U.S. Trustee and the Subchapter V Trustee no later than two business days before such Auction.

8.      **Evaluation of Bids.**  At the conclusion of the Auction, Debtor, in the exercise of its business judgment, shall have the right to determine the highest and best bid or combination of bids and designate one or more Successful Bids.

9.      **Notice of Successful Bidder.** No later than three (3) business days after the conclusion of the Auction for the Property, Debtor shall file a Notice of Successful Bidder.

10.      **Sale Objection Deadline.** Objections to the Sale of the Property, if any, must be made within three (3) business days of the Sale Approval Request filed with the Court on notice to all creditors and Qualified Bidders (the "Sale Objection Deadline").

11.    **Sale Order.** Debtor shall file and serve a form of proposed Sale Order for the Property along with the Sale Approval Request.

12.    **Sale Hearing.** If necessary, five (5) business days after the Sale Objection Deadline or as soon thereafter as the parties may be heard.

13.    **Sale Closing.** Closing of the Sale Transaction shall occur no later than fourteen (14) days after the later of (a) the entry of the Sale Order approving the Sale Transaction, or (b) the entry of a final and unappealable order or judgment of this Court in the Section 363(h) Proceedings authorizing Debtor to sell the Association Interest jointly with the sale of the interests of all Association Members in the Property.

14.    The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are incorporated herein and are approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any proposed Sale Transaction. Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Order. Debtor is authorized to take all actions necessary to implement the Bidding Procedures. Subject to the terms of the Bidding Procedures, Debtor may seek Court approval to modify the Bidding Procedures as necessary or appropriate to maximize value for the estate.

15.    The Auction Notice, substantially in the form attached hereto as **Exhibit 2**, is approved. As soon as reasonably practicable following the entry of this Order and the marketing period, Debtor will cause the Auction Notice to be served upon (a) the Office of the United States Trustee for the Middle District of Florida; (b) all Association Members; (c) Debtor's 20 largest unsecured creditors; (d) the United States Attorneys' Office for the Middle District of Florida; (e) the Internal Revenue Service; (f) the U.S. Securities and Exchange Commission; (g) the Office of the Attorney General for the State of Florida; (h) the Florida Department of Revenue; (i) the

Subchapter V Trustee; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.

## VI.    Miscellaneous

16.    Debtor will entertain only Qualified Bids for the Property. Any Association Member that does not submit a Section 363(i) Bid that is a Qualified Bid will be deemed to have waived and relinquished all rights and interests of such Association Member pursuant to section 363(i) of the Bankruptcy Code, and such Association Member shall be forever barred from seeking to exercise or enforce any such rights or interests.

17.    Debtor shall have the right to: (i) seek Court approval to modify the Sale Schedule; and (ii) conduct multiple Sale Transactions across one or more Auctions to maximize the value of the Property, in accordance with the Bidding Procedures.

18.    Debtor has the exclusive right to: (i) determine which bids are Qualified Bids; (ii) determine which Qualified Bid is the highest or otherwise best bid, and which Qualified Bid is the next highest or otherwise best bid; (iii) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with these sales procedures, or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of Debtor; (iv) waive terms and conditions set forth herein with respect to Qualified Bids; and (v) select a Qualified Bid before the Bid Deadline and move forward to seek Court approval of one or more direct Sale Transaction(s).

19.    The failure to include or reference a particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness or enforceability of such a provision in the Bidding Procedures.

20.    The Court, at the request of Debtor, and subject to its availability, may modify the dates of and adjourn any hearing(s) set by this Order without further Order of this Court, *provided* that Debtor will serve notice to all requisite parties informing them of such modification.

21.     Unless otherwise set forth in this Order, Debtor may seek Court approval to modify any of the deadlines set forth herein or provide for additional deadlines within the Sale Schedule, *provided* that Debtor will disclose all applicable deadlines in the Auction Notice or revised Auction Notice.

22.     Debtor may modify any Good Faith Deposit or Section 363(i) Good Faith Deposit as necessary or appropriate.

23.     In the event of any inconsistencies between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

24.     Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

25.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

26.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

27.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# # #

Attorney R. Scott Shuker is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this Order.

**<u>Exhibit 1</u>**

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:

STAR ISLAND VACATION
OWNERSHIP ASSOCIATION, INC.,[1]

              Debtor.

_____/

CASE NO. 6:25-bk-07207

CHAPTER 11

SUBCHAPTER V

**MARKETING PROCESS AND BIDDING PROCEDURES FOR THE**
**SUBMISSION, RECEIPT, AND ANALYSIS OF BIDS**
**IN CONNECTION WITH THE SALE OF PROPERTY**

**I.      Property.**

Debtor is seeking to sell all of the property governed by the Association, which includes 4 buildings containing a total of 184 units, along with their common areas, within the *Star Island Resort*, located at One Avenue of the Stars, Kissimmee, Florida (the "Property"), free and clear of all of all interests of Association Members, liens, claims, interests, or other encumbrances.

Debtor seeks to sell the Property to the highest and best bidder to maximize value for its estate. To provide the most competitive and flexible process, Debtor seeks to establish standardized procedures leading to and culminating in an auction that creates an open and level playing field that permits potential purchasers the flexibility to propose an acquisition of the Property. To accomplish this end, Debtor will engage in a sale process for the Property.

Debtor reserves the right to consider and select any Bid or combination of Bids as to the Property that maximizes the value and benefit to the bankruptcy estate.

The Marketing Period (*as defined below*) for the Property will commence on no later than January 30, 2026.

The Stalking Horse Deadline for the Property will be **January 30, 2026, at 5:00 p.m. (prevailing Eastern Time)**.

---

[1] The last four digits of Debtor's tax identification number are 6210. Debtor's primary place of business is 5000 Avenue of the Stars, Kissimmee, Florida, 34746.

The Bid Deadline for the Property will be **March 30, 2026, at 5:00 p.m. (prevailing Eastern Time)**.

The Auction for the Property will commence on **April 9, 2026, at 10:00 a.m. (prevailing Eastern Time)**.

## II.    Marketing Period/Process

Debtor will, through Hilco, prepare and implement the following comprehensive marketing and sales process for the Property, which will include:

- Print Media Advertising
- Internet & Digital Advertising
- Email Campaigns – targeted to over 20,000 active buyers
- Custom Webpage
- Custom Brochure & Offering Memorandum
- Signage
- Identified buyer/user contact lists
- Direct Mail
- Public Relations
- Prospect Management
- Virtual Due Diligence Room
- Professionally-Handled Property Showings
- Constant Communication with Interested Parties
- Real-time Analysis
- Post-Sale/Disposition Follow-up

(The marketing period for the Property shall be collectively referred to as the "Marketing Period").

## III.    Public Announcement of Auction.

Within three (3) business days after the occurrence of the Stalking Horse Deadline, Debtor shall serve on all parties, a notice (A) setting forth (I) the date, time, and link for the (a) Auction and (b) the Sale Approval Request (as defined below) process and (ii) the deadlines and procedures for objecting to the proposed Sale Transaction, and (B) the Bidding Procedures (the "Auction Notice"); and shall upload said materials into the data room for the Property. Debtor shall also upload said materials into the data room for the Property. The Auction Notice shall include a general description of the Property for sale.

## IV.    Potential Bidder Requirements.

To participate in the bidding process or otherwise be considered for any purpose hereunder, including to receive access to due diligence materials, a person or entity interested in purchasing the Property, which may include any Association Member in accordance with section 363(i) of the Bankruptcy Code (a "Potential Bidder") must deliver or have previously delivered to Debtor the following preliminary documentation (collectively, the "Preliminary Bid Documents"):

a.      an executed confidentiality agreement (a "Confidentiality Agreement") in form and substance acceptable to Debtor;

b.      sufficient information that the Potential Bidder has or can reasonably obtain the financial capacity to close a purchase of the Property, the adequacy of which must be acceptable to Debtor; and

c.      a statement detailing whether the Potential Bidder is partnering with or otherwise working with any other interested party in connection with the potential submission of a joint Bid, the identity of any such party or parties, and a concise description of the nature of such partnership or joint Bid to the extent reasonably practicable.

Debtor, in consultation with its advisors, will determine and notify each Potential Bidder whether such Potential Bidder has submitted adequate documents so that such Potential Bidder may proceed to conduct due diligence and submit a Bid.

## V.      Stalking Horse Reimbursement.

Upon entry of the Bidding Procedures Order, Debtor shall be authorized, but not obligated, in an exercise of its business judgment to (a) select a Qualified Bidder to act as a stalking horse bidder (a "Stalking Horse Bidder") in connection with the sale process and/or any ultimate Auction and (b) in connection with any stalking horse agreement with a Stalking Horse Bidder, Debtor may seek approval from the Court for Stalking Horse reimbursement of actual and necessary due diligence expenses up to a maximum of $100,000 (the "Expense Reimbursement"), and if provided for under the stalking horse agreement, may further seek court approval for a reasonable "break-up" fee, expressed as a percentage of the Stalking Horse Bid, not to exceed three percent (3%) (the "Break-Up Fee") (the Expense Reimbursement and Break-Up Fee each are a "Stalking Horse Protection," and collectively are the "Stalking Horse Protections"), provided that any overbid must be sufficient to satisfy any Stalking Horse Protections approved by the Court.

## VI.     Qualified Bid/Bidder Qualification Requirements.

To be deemed a Qualified Bidder and be deemed eligible to participate in any Auction, a Potential Bidder must deliver to Debtor and its advisors (i) an irrevocable offer for the purchase of some or all of the Property (each, a "Bid"), and shall meet the following criteria, in each case, on or prior to the Bid Deadline (as defined below); or, in the event Debtor selects a Stalking Horse Bidder, (ii) documentation satisfying all of the below criteria. An Association Member submitting a Bid pursuant to section 363(i) of the Bankruptcy Code (a "Section 363(i) Bid") must clearly specify in the Bid that such Association Member is exercising its rights and submitting such Bid pursuant to section 363(i).[2] The Potential Bidder must identify the Property it intends to bid upon and post the required deposit therefor as indicated below:

a.      **Purchased Property and Assumed Liabilities**: Each Bid must clearly state the following: (a) the Property to be purchased and/or liquidated or otherwise disposed

---

[2] Unless otherwise stated, each Section 363(i) Bid is a Bid and an Association Member submitting a Section 363(i) Bid is subject to the same requirements as other Potential Bidders.

of; and (b) the liabilities and obligations to be assumed (including any executory contracts or unexpired leases to be assumed and assigned), including any debt and cure costs to be assumed. Any Bid that is a Section 363(i) Bid must clearly state that such Bid is being submitted pursuant to section 363(i) of the Bankruptcy Code.

b.    **Good Faith Deposit**: Each Bid (other than a Section 363(i) Bid) must be accompanied by a cash deposit in an amount equal to five percent (5%) of the aggregate purchase price of the Bid to be held by a title company designated by Debtor (the "<u>Good Faith Deposit</u>"); provided, that the Good Faith Deposit may be held by a title company designated by the Potential Bidder so long as (i) such title company is acceptable to Debtor and (ii) the Potential Bidder, title company and Debtor enter into an escrow agreement in substantially the form attached to the form of purchase agreement. In the event Debtor selects a Stalking Horse Bidder, in order to be deemed a Qualified Bidder at the scheduled Auction, a Potential Bidder must post a deposit equal to five percent (5%) of the Stalking Horse Bid.

No later than two (2) business days after conclusion of the Auction, (i) the Successful Bidder and the Back-Up Bidder must adjust its Good Faith Deposit so that it equals ten percent (10%) of the aggregate purchase price specified in the Successful Bid or Back-Up Bid, as applicable, and (ii) if a Section 363(i) Bid is selected as the Successful Bid, the Successful Bidder must tender a cash deposit in an amount equal to ten percent (10%) of the aggregate purchase price of the Successful Bid to be held by a title company designated by Debtor (the "<u>Section 363(i) Good Faith Deposit</u>"); provided, that the Section 363(i) Good Faith Deposit may be held by a title company designated by the Successful Bidder so long as (i) such title company is acceptable to Debtor and (ii) the Successful Bidder, title company and Debtor enter into an escrow agreement in substantially the form attached to the form of purchase agreement.

c.    **Purchase Price**: Each Bid must (i) clearly set forth the purchase price to be paid for the Property and any assumption of liabilities by the Potential Bidder (the "<u>Purchase Price</u>"), and (ii) identify separately the cash and non-cash components of the Purchase Price in U.S. Dollars.

d.    **Same or Better Terms; Bid Documents**: Each Bid must include duly executed and non-contingent, where applicable, transaction documents necessary to effectuate the transactions contemplated in the Bid (the "<u>Bid Documents</u>"). The Bid Documents shall include: (i) a redline copy of the form of purchase agreement that will be provided by Debtor that such bidder is willing to execute, which redline edits may not change material terms to the detriment of Debtor and must be on at least equivalent or better terms to the bankruptcy estate as the form purchase agreement, (ii) a schedule of contracts and leases to be assumed to the extent applicable to the Bid, (iii) any other material documents integral to such Bid, (iv) a statement from the Potential Bidder that the Qualified Bid will be irrevocable (whether or not such Qualified Bid is selected as the Successful Bid or next highest or otherwise best Bid (the "<u>Back-Up Bid</u>")) until the consummation of the Sale Transaction, and (e) to the extent the Potential Bidder is utilizing a title company

other than the one designated by Debtor, evidence of committed title insurance, documented to Debtor's satisfaction.

e.    **No Qualified Bidder Bid Protections**: Unless submitted prior to the applicable Stalking Horse Deadline in connection with a request to be named as a Stalking Horse Bidder, and unless the Qualified Bidder is specifically designated as a Stalking Horse Bidder under these Bid Procedures, a Qualified Bid must include a statement that the Bid does not entitle such bidder to any Break-Up Fee, termination fee, Expense Reimbursement, or similar type of payment or reimbursement and a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the Property.

f.    **Sources of Financing**: A Qualified Bid must include evidence of financial wherewithal to consummate the proposed Sale Transaction set forth in its Bid with cash on hand or, to the extent that the Bid is not accompanied by such evidence, the Bid must include committed financing, documented to Debtor's satisfaction, that demonstrates that the Potential Bidder has received sufficient debt and/or equity funding commitments to satisfy the Potential Bidder's obligations under the proposed Sale Transaction and other obligations under its Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to Debtor.

g.    **Contingencies; No Financing or Diligence Outs**: The Bid must not contain any contingencies as to the validity, effectiveness, or binding nature of the Bid, including, without limitation, contingencies for due diligence, inspection, title insurance or financing of any kind (including any conditions pertaining to financial performance, conditions, or prospects). All diligence <u>must</u> be completed before the Bid Deadline.

h.    **Identity**: Each Bid must fully disclose the identity of each entity and each entity's shareholders, partners, investors, and ultimate controlling entities that will be bidding for or purchasing the Property or otherwise participating in connection with such Bid, and the complete terms of any such participation, along with sufficient evidence that the Potential Bidder is legally empowered to complete the transactions on the terms contemplated by the parties. Each Bid must also include contact information for the specific person(s) whom K&L Gates LLP or Shuker & Dorris, P.A. can contact regarding such Bid.

i.    **As-Is, Where-Is**: Each Bid must include a written acknowledgement and representation that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Property in making its Bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the completeness of any information provided in connection therewith, except as expressly stated in the

Potential Bidder's proposed purchase agreement; and (iv) is otherwise willing to purchase the Property "as is, where is."

j.    **Authorization**: Each Bid must contain evidence that the Potential Bidder has obtained all necessary authorizations or approvals from its shareholders, members, and/or its board of managers or directors, or any other internal and other approvals, as applicable, with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

k.    **Joint Bids**: Debtor will be authorized to approve joint Bids in its reasonable business judgment, on a case-by-case basis, so long as a joint Bid meets the Qualified Bid requirements, and the applicable bidders otherwise comply with these Bidding Procedures.

l.    **Adequate Assurance of Future Performance**: Each Bid must (i) identify any executory contracts (the "<u>Executory Contracts</u>") and any unexpired leases (the "<u>Unexpired Leases</u>") to be assumed or assumed and assigned in connection with the proposed Sale Transaction, (ii) provide for the payment of all cure amounts (the "<u>Cure Amounts</u>") related to such Executory Contracts and Unexpired Leases by the Qualified Bidder, (iii) demonstrate that the Qualified Bidder can provide adequate assurance of future performance under all such Executory Contracts and Unexpired Leases sufficient to satisfy the requirements of sections 365(b)(3) and 365(f)(2)(B) of the Bankruptcy Code, and (iv) provide the legal name of the proposed assignee (the "<u>Proposed Assignee</u>") and any guarantors, as applicable; and (v) provide documentation as necessary to establish the foregoing.

m.    **Acknowledgement of Compliance with Bidding Procedures, Bidding Procedures Order, Bankruptcy Code, and Non-Bankruptcy Law**: Each Bid must acknowledge its compliance in all respects with these Bidding Procedures, the Bidding Procedures Order, Bankruptcy Code and any applicable non-bankruptcy law.

n.    **No Collusion**: The Potential Bidder must (i) acknowledge in writing that it has not engaged in any collusion with respect to any Bids or the Sale Transaction, specifying that it did not agree with any Potential Bidders to control price; and (ii) agree not to engage in any collusion with respect to any Bids, the Auction, or the Sale Transaction. For the avoidance of doubt, this requirement does not restrict Potential Bidders from working with other Potential Bidders with Debtor's prior written consent (email shall suffice).

o.    **Good Faith Offer**: The Bid must constitute a good faith, *bona fide* offer to consummate the Sale Transaction.

p.    **Irrevocable**: Each Bid must state that in the event such Bid is chosen as the Back-Up Bid (as defined below), it shall remain irrevocable until Debtor and the Successful Bidder consummate the applicable Sale Transaction.

q.   **Back-Up Bid**: Each Bid shall state whether the Potential Bidder will serve as a Back-Up Bidder (as defined below) if the Potential Bidder's Bid is the next highest or otherwise best bid.

r.   **Expected Closing Date**: Each Bid must state the Potential Bidder's expected date of closing of the Sale Transaction, which proposed date must be consistent with the closing date set forth in the sale timeline portion of the Bidding Procedures.

s.   **Time Frame for Closing**: A Bid by a Potential Bidder must be reasonably likely to be consummated, if selected as the Successful Bid (as defined herein), within the time frame as set forth in the Bidding Procedures or as otherwise acceptable to Debtor.

t.   **No Fees**: Except for any Expense Reimbursement and/or Break-Up Fee as may be awarded by the Court to a designated Stalking Horse Bidder, each Potential Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid(s) is agreeing to disclaim any right to receive a fee analogous to a Break-Up Fee, Expense Reimbursement, termination fee, or other similar form of compensation.

For the avoidance of doubt, unless submitted prior to the applicable Stalking Horse Deadline for consideration as a Stalking Horse Bid, and unless such bid is actually designated by Debtor as a Stalking Horse Bid prior to the Stalking Horse Deadline, each Potential Bidder by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

u.   **Adherence to Bidding Procedures**: By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

v.   **Consent to Jurisdiction**: Each Potential Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to Debtor's qualification of Bids, the Auction, the Sale, the Sale Transaction and the construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, and the closing of the Sale Transaction, as applicable; and

w.   **Conditions to Closing**: Each Bid must identify with particularity each and every condition to closing, including the Executory Contracts and Unexpired Leases for which assumption and assignment is required.

Only Bids fulfilling all of the preceding requirements contained in this section may, or otherwise in Debtor's reasonable business judgment will, be deemed to be "Qualified Bids," and only those parties submitting Qualified Bids may, at Debtor's reasonable business judgment, be deemed to be "Qualified Bidders."

In the event that Debtor does, in fact, select a Stalking Horse Bidder for the Property, in order to be deemed a Qualified Bidder at the Auction, a Potential Bidder must comply with all requirements for a Qualified Bid as set forth in this Article VI above.

Neither Debtor nor any of its advisors are making or have at any time made any warranties or representations of any kind or character, express or implied, with respect to the Property, including, but not limited to, any warranties or representations as to operating history or projections, valuation, governmental approvals, the compliance of the Property with governmental laws, the truth, accuracy, or completeness of any documents related to the Property, or any other information provided by or on behalf of Debtor to a bidder, or any other matter or thing regarding the Property. All bidders must acknowledge and agree that upon closing, Debtor shall sell and transfer to the Successful Bidder, and the Successful Bidder shall accept, the Property, except to the extent expressly provided in the Court's order approving the Sale Transaction. Neither Debtor nor any of its advisors will be liable for or bound by any express or implied warranties, guaranties, statements, representations, or information pertaining to the Property or relating thereto that Debtor, any advisor, or agent representing or purporting to represent Debtor to whomever might have made or furnished, directly or indirectly, orally or in writing, unless (with respect to Debtor) specifically set forth in the Court's order approving the Sale Transaction.

Within three (3) days after the Bid Deadline, Debtor shall determine which Potential Bidders are Qualified Bidders and will notify the Potential Bidders whether the Bids submitted constitute Qualified Bids or if the bidder is otherwise determined to be a Qualified Bidder, which will enable such Qualified Bidders to participate in the Auction. Any Bid that is not deemed a Qualified Bid shall not be considered by Debtor; *provided* that if Debtor receives a Bid prior to the Bid Deadline that does not satisfy the requirements of a Qualified Bid, Debtor may provide the Potential Bidder with the opportunity to remedy any deficiencies prior to the Auction.

Debtor's obligations as to the Sale Transaction are contingent upon obtaining Court approval for such Sale Transaction and upon the Court's entry of a final and unappealable order or judgment authorizing Debtor to sell the Association Interest jointly with the sale of the interests of all other Association Members in the Property in a 363(h) Proceeding or otherwise.

## VII.    [Reserved].

## VIII.   Obtaining Due Diligence Access.

Only Potential Bidders shall be eligible to receive due diligence information, access to Debtor's electronic data room, and additional non-public information regarding Debtor. ***No Potential Bidder will be permitted to conduct any due diligence without entry into a Confidentiality Agreement***. Beginning on the date Debtor determines that a party is a Potential Bidder, or as soon as reasonably practicable thereafter, Debtor will provide such Potential Bidder with access to an electronic data room and reasonable due diligence information, as requested by such Potential Bidder, as soon as reasonably practicable after such request. Debtor shall promptly consult with its advisors (a) with respect to any due diligence disputes that arise concerning any Potential Bidder and (b) prior to revoking due diligence access to any such entity. Debtor shall post substantially all written due diligence provided to any Potential Bidder to Debtor's electronic data room for the benefit of all Potential Bidders.

Potential Bidders will not, directly or indirectly, contact or initiate or engage in discussions in respect of matters relating to Debtor or a potential transaction with any customer, supplier, or other contractual counterparty of Debtor without the prior written consent of Debtor. The due diligence period will end on the Bid Deadline, and subsequent to the Bid Deadline, Debtor shall have no obligation to furnish any due diligence information.

In connection with the provision of due diligence information to Potential Bidders, Debtor shall not furnish any confidential information relating to Debtor or a potential transaction to any person except a Potential Bidder or such Potential Bidder's duly authorized representatives to the extent provided in an applicable Confidentiality Agreement.

Debtor and its advisors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders; *provided* that Debtor may decline to provide such information to Potential Bidders who, in Debtor's reasonable business judgment, have not established, or who have raised doubt, that such Potential Bidders intend in good faith to, or have the capacity to, consummate a Sale Transaction.

### A.    Communications with Potential Bidders (including Qualified Bidders).

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive direct communications, including any diligence requests, with Potential Bidders (including any Qualified Bidders) shall be through Debtor's counsel or Hilco.

### B.    Due Diligence from Potential Bidders (including Qualified Bidders).

Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access requested by Debtor or its advisors, regarding the ability of such Potential Bidder to consummate its contemplated transaction. Failure by a Potential Bidder to comply with such reasonable requests for additional information may be a basis for Debtor to determine that such bidder is no longer a Potential Bidder or that a Bid made by such bidder is not a Qualified Bid.

## IX.    Bid Deadline.

Binding Bids must be submitted in writing to the following parties (the "Bid Notice Parties") so as to be **actually received** no later than 5:00 p.m. (prevailing Eastern Time) on March 30, 2026 (the "Bid Deadline"):

(i)    counsel to Debtor, K&L Gates LLP, Southeast Financial Center, Suite 3900, 200 South Biscayne Blvd., Miami, FL 33131, Attn: Jeffrey T. Kucera and Carly S. Everhardt (jeffrey.kucera@klgates.com and carly.everhardt@klgates.com).

(ii)    counsel to Debtor, K&L Gates LLP, One Newark Center, Tenth Floor, Newark, NJ 07102, Attn: Daniel M. Eliades and Peter J. D'Auria (daniel.eliades@klgates.com and peter.dauria@klgates.com).

(iii)    counsel to Debtor, K&L Gates LLP, 300 South Tryon St., Suite 1000, Charlotte, NC 28202, Attn: Jonathan N. Edel (jon.edel@klgates.com).

(iv)    counsel to Debtor, Shuker & Dorris, P.A., 121 South Orange Ave., Suite 1120, Orlando, FL 32801, Attn: R. Scott Shuker (rshuker@shukerdorris.com).

(v)    the broker, Hilco Real Estate, LLC, 5 Revere Dr., Suite 206, Northbrook, IL 60062, Attn: Jeffrey Azuse (jazuse@hilcoglobal.com) and Jordan Schack (jschack@hilcoglobal.com).

Debtor may extend the Bid Deadline for any reason whatsoever, in its reasonable business judgment for all or certain Potential Bidders.

**X.    Evaluation of Qualified Bids.**

Debtor shall evaluate Qualified Bids and identify the Qualified Bid that is, in Debtor's business judgment, the highest or otherwise best Qualified Bid or combination of Qualified Bids for the Property (the "Starting Bid").

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, Debtor may consider the following factors, in addition to any other factors that Debtor deems appropriate: (a) the amount and nature of the total consideration; (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by Debtor's estate from the transaction contemplated by the Bid Documents, including any cure costs associated with any assumption(s) of liabilities, executory contracts or unexpired leases; (d) the tax consequences of such Qualified Bid. Prior to commencing the Auction, Debtor shall notify all Qualified Bidders as to which Qualified Bid is the Starting Bid for the Auction; and (e) any other factor or metric relevant to the evaluation of whether said Qualified Bid is in the best interest of the estate. At such time, Debtor shall also distribute copies of the Starting Bid to each Qualified Bidder.

**XI.    Auction.**

Other than as expressly set forth herein, if Debtor receives more than one Qualified Bid for the Property by the Bid Deadline, Debtor shall conduct the Auction in accordance with the Auction Procedures (as defined below) to determine the Successful Bidder in its reasonable business judgment with respect to the Property. If Debtor does not receive a Qualified Bid by the Bid Deadline, Debtor will not conduct the Auction.

The Auction for the Property shall commence on April 9, 2026, at 10:00 a.m. (prevailing Eastern Time), or such later time or other place as Debtor determines.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

a.    the Auction will be conducted virtually via Zoom;

b.    except as otherwise provided herein, only Qualified Bidders shall be entitled to bid at the Auction;

c.    the Qualified Bidders must appear in person or through duly authorized representatives at the Auction with authority to bind such Qualified Bidder as to any amount bid by such person or representative;

d.    bidding shall begin with the Starting Bid, which may be a Stalking Horse Bid, if applicable;

e.    subsequent Bids (each, an "Overbid") may only be made at the Auction and any initial overbid must be sufficient to pay any Stalking Horse Bidder Expense Reimbursement and/or Break-Up Fee approved by the Court plus no less than $100,000, and thereafter shall be at least a $100,000 increase in cash, cash equivalents, or other such consideration that Debtor, in its reasonable business judgment, deems equivalent over the previous Bid. Debtor may, in its reasonable business judgment, announce increases or reductions to the minimum Overbid at any time during the Auction. For the avoidance of doubt, each successive Bid that a Qualified Bidder may submit at the Auction must contain a Purchase Price in cash, cash equivalents, or such other consideration that Debtor, in its reasonable business judgment, deems equivalent that exceeds the then existing highest Bid by at least the amount of the minimum Overbid;

f.    at the commencement of the Auction, Debtor may announce procedural and related rules governing the Auction, including time periods available to all Qualified Bidders to submit successive bid(s);

g.    each Qualified Bidder will be permitted a reasonable time to respond to previous Bids at the Auction, as determined by Debtor;

h.    during the course of the Auction, Debtor shall, after submission of each Overbid, promptly inform each Qualified Bidder of the terms of the previous Bids and inform each Qualified Bidder which Overbid(s) reflect, in Debtor's view, the highest or otherwise best bid(s) for the Property;

i.    the Auction will be transcribed to ensure an accurate recording of the bidding at the Auction;

j.    each Qualified Bidder will be required to confirm on the record that it has not engaged, and will not engage, in any collusion with respect to the bidding or the Sale Transaction. For the avoidance of doubt, (a) this requirement does not restrict Qualified Bidder(s) from working with other Qualified Bidder(s) with Debtor's prior written consent;

k.    each Qualified Bidder will be required to confirm that its Bid is a good faith, *bona fide* offer and it intends to consummate the Sale Transaction if selected as the Successful Bid or the Back-up Bidder in accordance with these Bidding Procedures (as may be modified in accordance herewith at the Auction);

l.      the Court and Debtor will not consider Bids made after the Auction has been closed;

m.      Debtor, in its reasonable business judgment, may reject, at any time before entry of an order of the Court approving a Successful Bid, any Bid that Debtor determines is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale Transaction, or (iii) contrary to the best interests of Debtor, its estate, its creditors, and other stakeholders;

n.      Debtor has the right to request any additional information that will allow Debtor to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by their proposal and any further information that Debtor believes is reasonably necessary to clarify and evaluate any Bid made by a Qualified Bidder during the Auction;

o.      Debtor reserves the right, in its reasonable business judgment, to adjourn the Auction one or more times to, among other things, (a) facilitate discussions between Debtor and Qualified Bidders, (b) allow Qualified Bidders to consider how they wish to proceed, and (c) provide Qualified Bidders the opportunity to provide Debtor with such additional evidence as Debtor, in its reasonable business judgment, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount;

p.      notwithstanding anything herein to the contrary, Debtor may, at any time, choose to adjourn the Auction by announcement at the Auction. Debtor shall promptly file notice of such adjournment with the Court; and

q.      Only Debtor, Qualified Bidders, the U.S. Trustee, the Subchapter V Trustee and any other parties as Debtor may determine to include in its reasonable discretion, in each case, along with the representatives and advisors of the foregoing parties, shall be entitled to attend the Auction, and only Qualified Bidders will be entitled to make Bids at the Auction.

For the avoidance of doubt, nothing in the Auction Procedures will prevent Debtor from exercising its respective fiduciary duties under applicable law (as reasonably determined in good faith by Debtor, in consultation with counsel).

## XII.    Acceptance of the Successful Bid.

The Auction shall continue until (i) there is only one Qualified Bid or a combination of Qualified Bids that Debtor determines, in its reasonable business judgment and in a manner consistent with the exercise of its fiduciary duties and outlined below in further detail, is the highest or otherwise best Bid to purchase the Property (each, a "Successful Bid"), and (ii) Debtor determines, in its reasonable business judgment, that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be reasonably acceptable to Debtor, at which point, the Auction will be closed.

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, Debtor may consider the following factors in addition to any other factors that Debtor deems appropriate: (a) the amount and nature of the total consideration, which includes, but is not limited to, assumed liabilities (administrative liabilities, cure payments), and the amount of Executory Contracts and Unexpired Leases being assumed; (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by Debtor's estate from the transaction contemplated by the Bid Documents; and (d) the tax consequences of such Qualified Bid; and (e) any other consideration that may impact Debtor's stakeholders.

Any Qualified Bidder that submits a Successful Bid will be deemed a "Successful Bidder" with respect to the Property for the purchase pursuant to such Successful Bid. Debtor shall, within three (3) days of the conclusion of the Auction, file a notice identifying the Successful Bid and the Successful Bidder with the Court. Within two (2) business days after the conclusion of the Auction, the designated Successful Bidder shall execute a binding purchase and sale agreement ("PSA") on the terms of the Successful Bid and consistent with the form PSA submitted by said Successful Bidder along with its Qualified Bid. For the avoidance of doubt, the execution of the PSA shall deem Debtor's selection of the Successful Bid final and, subject to the designation of the Back-Up Bid, Debtor shall not solicit and/or accept any further Bids or offers to submit a Bid after such selection; *provided* that, notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures shall require the members, board of directors, board of managers, or such similar governing body of Debtor to take or refrain from taking any action that Debtor determines in good faith, in consultation with counsel, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Within two (2) business days of the selection of the Successful Bidder, such Successful Bidder shall adjust its Good Faith Deposit so that it equals ten percent (10%) of the aggregate purchase price specified in the Successful Bid, which shall be submitted by wire transfer of immediately available funds to an escrow account held by the applicable title company.

## XIII.  Designation of Back-Up Bidder.

The Back-Up Bid to purchase any the Property (the "Back-Up Bidder") will be determined by Debtor at the conclusion of the Auction, and will be announced at that time to all the Qualified Bidders participating in the Auction. Debtor's selection of a Back-Up Bid shall be deemed final, and Debtor shall not accept any further Bids or offers to submit a Bid after such selection. Debtor will be authorized, but not required, to consummate the Sale Transaction with the Backup Bidder without further order of the Court, so long as such Back-Up Bid shall have been approved in connection with the Court's approval of the Successful Bid, or subject to Court approval if not.

Within two (2) business days of the selection of the Back-Up Bidder, such Back-Up Bidder shall adjust its Good Faith Deposit so that it equals ten percent (10%) of the aggregate purchase price specified in the Back-Up Bid, which shall be submitted by wire transfer of immediately available funds to an escrow account held by the applicable title company.

If, for any reason, the Successful Bidder fails to consummate the purchase of the Property within the time permitted, then the Back-Up Bidder will automatically be deemed to have

submitted the Successful Bid for the Property, and the Back-Up Bidder shall be deemed a Successful Bidder for the Property and shall be required to consummate a Sale Transaction with Debtor as soon as is reasonably practicable within the time frames as set forth herein without further order of the Court, upon 24 hours advance notice filed with the Court.

The Back-Up Bid shall remain open and irrevocable until the earliest to occur of (i) consummation of a Sale Transaction with the Successful Bidder, (ii) the termination of the PSA with the Successful Bidder or failure to close by the Successful Bidder, and (iii) the release of such Back-Up Bid by Debtor in writing (such date, the "Back-Up Termination Date"). Debtor shall return the Back-Up Bidder's deposit owed within five (5) business days of the Back-Up Termination Date.

## XIV.    Approval of the Sale Transaction.

Within three (3) business days after the execution of a PSA, Debtor shall file the Sale Approval Request consisting of (A) a certification with the Court (i) identifying the Successful Bidder as the proposed Purchaser of the applicable Property; (ii) attesting that all contingencies and conditions precedent to the closing of the Sale Transaction have been satisfied; (iii) confirming that the Successful Bid was a Qualified Bid and satisfied all of the requirements of the Bidding Procedures approved by this Court; (iv) confirming that the proposed Sale Transaction meets all the criteria for approval under 11 U.S.C. § 363 and as otherwise set forth in the Bidding Procedures Order; and (v) memorializing Debtor's determination that the proposed purchase represents the highest and best offer received, and manifests the most advantageous sale transaction for the bankruptcy estate; and (B) a proposed form of order approving the Sale Transaction. Said certification shall provide parties with a three (3) business day period within which to file an objection to the proposed sale transaction and request that, in the absence of any filed objection, the Court enter an order approving the proposed sale transaction at the conclusion of the objection period.[3]

The certification will further request that, in the event an objection is filed, responsive pleadings shall be filed by Debtor within one (1) business day after the Sale Objection Deadline and that the Court schedule a hearing within five (5) business days after the Sale Objection Deadline. To the extent a Sale Hearing is conducted, Debtor will seek certain findings from the Court regarding the Auction, including, among other things, that: (1) the Auction was conducted, and the Successful Bidder was selected, in accordance with the Bidding Procedures; (2) the Auction was fair in substance and procedure; (3) the Successful Bid was a Qualified Bid as defined in these Bidding Procedures; and (4) consummation of the Sale Transaction as contemplated by the Successful Bid in the Auction will provide the highest or otherwise best offer for the Property and is in the best interests of Debtor and its estate.

---

[3] For the avoidance of doubt, closing of the Sale Transaction shall be subject to the entry of a final and unappealable order or judgment of this Court authorizing Debtor to sell the Property, including the Association Interest jointly with the sale of the interests of all other Association Members in the Property pursuant to section 363(h) of the Bankruptcy Code.

The Successful Bidder and Back-up Bidder shall take reasonable steps to support Debtor in obtaining approval of the Sale Transaction, including by filing an affidavit, affirmation or declaration (as appropriate) to satisfy the requirements of 11 U.S.C. § 363(m) and (n), including asserting its good faith and lack of collusion with respect to the sale of the Property, and the bidding and auction related thereto, within three (3) calendar days of the conclusion of the Auction.

**XV.    Reservation of Rights.**

Debtor shall have the right to alter the Bidding Procedures based upon the circumstances and/or exigencies of a given situation. Debtor reserves the exclusive right to: (i) determine which bids are Qualified Bids and which Potential Bidders are Qualified Bidders; (ii) determine which Qualified Bid is the highest or otherwise best bid and which is the next highest or otherwise best bid; (iii) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with these sales procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of Debtor; and (iv) waive terms and conditions set forth herein with respect to Qualified Bids.

**Exhibit 2**

**Auction Notice**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:

STAR ISLAND VACATION
OWNERSHIP ASSOCIATION, INC.,[1]

           Debtor.

_____/

CASE NO. 6:25-bk-07207

CHAPTER 11

SUBCHAPTER V

**NOTICE OF SALE BY AUCTION AND SALE HEARING**

    **PLEASE TAKE NOTICE** that on [●], 2026, the United States Bankruptcy Court for the Middle District of Florida (the "Court") entered the *Order (I) (A) Approving Auction and Bidding Procedures, (B) Scheduling Bid Deadlines and an Auction, (C) Approving the Form and Manner of Notice Thereof, and (II) (A) Authorizing the Sale of Assets and (B) Granting Related Relief* [Doc. No. [___]] (the "Bidding Procedures Order")[2] in the chapter 11 case of the above-captioned debtor and debtor in possession ("Debtor").

    **PLEASE TAKE FURTHER NOTICE** that Debtor is soliciting offers for the purchase of the Property consistent with the bidding procedures (the "Bidding Procedures") approved by the Court pursuant to the Bidding Procedures Order. **All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order.** To the extent that there are any inconsistencies between this notice and the Bidding Procedures or Bidding Procedures Order, the Bidding Procedures or Bidding Procedures Order, as applicable, shall govern in all respects.

    **PLEASE TAKE FURTHER NOTICE** that, if Debtor receives qualified competing Bids for the Property within the requirements and time frame specified by the Bidding Procedures, Debtor will conduct an auction (the "Auction") of the Property on **April 9, 2026, at 10:00 a.m. (prevailing Eastern Time).** The Auction shall take place virtually via Zoom.

    **PLEASE TAKE FURTHER NOTICE** that only Debtor, Qualified Bidders, the U.S. Trustee, the Subchapter V Trustee and any other parties as Debtor may determine to include in its reasonable discretion, in each case, along with their representatives and advisors, shall be entitled to attend the Auction, and only Qualified Bidders will be entitled to make Overbids at the Auction.

---

[1] The last four digits of Debtor's tax identification number are 6210. Debtor's primary place of business is 5000 Avenue of the Stars, Kissimmee, Florida, 34746.

[2] Capitalized terms used but not defined in this notice have the meanings given to them in the Bidding Procedures Order

**All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order.**

**PLEASE TAKE FURTHER NOTICE** that Debtor will seek approval of the Sale Transaction at a hearing scheduled to commence on or before **[_____], at 10:00 a.m. (prevailing Eastern Time)** (the "<u>Sale Hearing</u>") before the Honorable Judge Robson, or conducted consistent with the procedures established pursuant to the Court's standing orders regarding remote hearings in bankruptcy cases.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order, objections to consummation or approval of the Sale Transaction must (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received* on or before [_____], at 5:00 p.m. (prevailing Eastern Time)** by the following parties: (i) counsel to Debtor, K&L Gates LLP, Southeast Financial Center, Suite 3900, 200 South Biscayne Blvd., Miami, FL 33131, Attn: Jeffrey T. Kucera and Carly S. Everhardt (jeffrey.kucera@klgates.com and carly.everhardt@klgates.com); (ii) counsel to Debtor, K&L Gates LLP, One Newark Center, Tenth Floor, Newark, NJ 07102, Attn: Daniel M. Eliades and Peter J. D'Auria (daniel.eliades@klgates.com and peter.dauria@klgates.com); (iii) counsel to Debtor, K&L Gates LLP, 300 South Tryon St., Suite 1000, Charlotte, NC 28202, Attn: Jonathan N. Edel (jon.edel@klgates.com); (iv) counsel to Debtor, Shuker & Dorris, P.A., 121 South Orange Ave., Suite 1120, Orlando, FL 32801, Attn: R. Scott Shuker (rshuker@shukerdorris.com); (v) Office of the United States Trustee for Region 21, George C. Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801-2210, Attn: Guy A. Van Baalen (wanda.murray@usdoj.gov and Audrey.m.Aleskovsky@usdoj.gov); and (vi) Subchapter V Trustee, Aaron R. Cohen, P.O. Box 4218, Jacksonville, FL 32201 (aaron@arcohenlaw.com).

<u>**CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION**</u>

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE TRANSACTION, AS APPLICABLE, ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER, SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE PROPERTY FREE AND CLEAR OF ALL INTERVAL AND OTHER INTERESTS OF ASSOCIATION MEMBERS, LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS MAY BE SET FORTH IN THE PURCHASE AGREEMENT, AS APPLICABLE.**

Dated: [_____]

By: */s/ DRAFT* _____