# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION
### www.flmb.uscourts.gov

In re:

STAR ISLAND VACATION OWNERSHIP, INC.,

Case No.: 6:25-bk-07207-GER

Chapter 11

      Debtor.

_____ /

## EXPEDITED MOTION FOR RELIEF FROM
## BIDDING PROCEDURES ORDER AND FOR CORRECTIVE
## BIDDER DISCLOSURES REGARDING MARKETING MATERIALS

**Star Island Development Corp.** ("Star Island Development"), **The Club at Star Island, Inc.** ("The Club at Star Island"), **and Star Island Management Corp.** ("Star Island Management") (collectively the "Movants"), by and through undersigned counsel, and pursuant to 11 U.S.C. §105(a), Rules 9014, 9023 & 9024, *Federal Rules of Bankruptcy Procedure,* file this Motion (the "Motion") respectfully requesting this Court modify the *Order (I) (A) Approving Auction And Bidding Procedures, (B) Scheduling Bid Deadlines And An Auction, And (C) Approving The Form And Manner Of Notice Thereof, And (ii) (A) Setting Hearing To Approve Sale Of Assets And (B) Granting Related Relief* (the "Bidding Procedure Order") (Doc. No. 99) to prevent the continued dissemination of misrepresentations to prospective purchasers related to the rights, privileges and condition of the to-be purchased assets subject to the Bidding Procedures Order. Specifically, Movants further request immediate corrective disclosures to potential purchasers in light of materially misleading marketing materials disseminated after entry of the Bidding Procedures Order pursuant to Section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code"), and in support thereof state as follows:

## I.  INTRODUCTION

1.      This Motion seeks expedited relief to protect the integrity of the sale process to: (i) confirm that the sale process authorized by the Bidding Procedures Order is limited to the discrete "Property" identified in the sale pleadings and does **not** include the real property the broader Star Island Resort or related "Resort"/retained properties and does not provide, without conditions that have not been disclosed, the benefits of the amenities and like facilities of the adjoining properties; (ii) confirm that nothing in the Bidding Procedures Order, any marketing of the Property, or any subsequent sale order may be construed to strip, invalidate, extinguish, or otherwise impair the Recorded Declarations and other covenants running with the land, including the DCCR recorded at OR Book 1638, Page 2112 (CFN 99113026); (iii) require Debtor and its marketing agent to cease and desist from using the misleading advertisement and related materials; and (iv) require corrective written notice to all potential purchasers who have received, responded to, or registered based on the misleading materials.

Following entry of the Bidding Procedures Order, the Debtor's marketing agent circulated marketing materials that materially misdescribe what is being sold.  These marketing materials contain numerous pictures of buildings and amenities the Debtor does not own thereby creating the grossly misleading impression the Debtor can convey property it has no right to sell.  These marketing materials also falsely imply that a purchaser will obtain access to non-debtor resort amenities and common facilities without compliance with the Recorded Declarations, and, most importantly, without attendant cost. These statements are false and materially misleading because the Debtor does not own the resort-wide amenities, roads, and key infrastructure serving the offered buildings, and any access to non-debtor amenities/common elements is conditioned on recorded covenants, restrictions, and easements that bind any subsequent purchaser and establish

a mandatory club structure, comprehensive use restrictions, and substantial financial obligations. Because potential purchasers must understand what is and what is not being sold and what obligations attend that property which the Debtor can sell, Movants request clarification and corrective bidder disclosures now, prior to entry of any final sale order.

## II.    BACKGROUND

*Star Island Development Corp.*

2.      The Property is located within a larger timeshare resort commonly known as the Star Island Resort and Country Club located in Kissimmee, Florida.  The Debtor owns only four of the 17 buildings located at this resort, the "footprint" of such buildings. The Debtor's property consists of roughly two acres of the approximately 72 acres that comprise this resort. The Debtor is merely one of the ten of the condominium associations operating at the resort. And there are an additional 282 units at this resort that roughly 20,000 individual timeshare owners – not the Debtor and its constituency – own.

3.      Star Island Development Corp. and/or its related parties – not the Debtor – own, maintain, operate, and manage the resort's common areas and also own, manage,  maintain, and operate all the recreational and support facilities at the resort  including, but not limited to, the pools, spa, game room, roads, tennis courts, clubhouse, fitness center, front desk, and bar. Star Island Development Corp. and/or its related parties – not the Debtor –  have the exclusive right to provide the Debtor or any subsequent owner of the Debtor's Property with operational services including, but not limited to, housekeeping, maintenance, security, and front desk check in together with the continuing exclusive right to provide all utilities, phone, and Internet services to the Debtor's Property . Access to and use of the foregoing with respect to the Debtor's Property has been, is, and will be contingent upon payment of a fee to Star Island Development Corp. and/or its

related parties, as applicable. The Bidding Procedures Motion (Doc. No. 88) does not make the full import of these matters clear:

> Star Island Development Corp. ("SIDC") maintains and is the owner of the pedestrian and vehicular ingress and egress through and over all passageways, corridors, lobbies, restrooms, parking lots, green areas and elevators from the entrance of the Resort and all portions of the common areas at the Resort (the "Common Areas"). SIDC also owns and maintains the following amenities: (a) 40' x 60' heated swimming pool with 3,000 sq. ft. of deck and a 12 foot adjacent spa, (b) nine standard size tennis courts, and (c) a 14,000 sq. ft. clubhouse and fitness center (the "Recreational and Support Facilities"). SIDC also provides to Debtor access to the following utilities at the Resort: (a) telephone lines, (b) electrical lines, (c) water lines, (d) sewer lines, and (e) cable TV (collectively the "Utilities" and together with the Common Areas and the Recreational and Support Facilities, the "Retained Properties").

4.      The Property is subject to the Declaration of Covenants, Conditions and Restriction and Grant of Easements (the "DCCR") dated July 2, 1999, and recorded by SIDC on July 21, 1999, with the Clerk of Circuit Court of Osceola County, Florida in CL 99113026 at OR 1638/2112, as amended. The DCCR gives each member of Debtor a non-exclusive grant of easement to use the Retained Properties. In exchange, the Debtor is required to pay certain "Club Dues" to SIDC. In addition, the DCCR requires Debtor to pay its proportionate share of the cost and expense of maintenance of the Retained Properties based upon the number of units existing in the Resort in proportion to the number of units existing in the project at the time SIDC incurs the cost of such maintenance. Absent compliance with the DCCR and the non-exclusive easement of ingress and egress it establishes, the owner of the Property loses the benefits described above, including the ability of ingress and egress, so that the Property is effectively landlocked.

*The Sale and Bidding Procedures*

5.      On January 15, 2026, the Debtor filed its *Motion for Entry of an Order (I) (A) Approving Auction and Bidding Procedures, (B) Scheduling Bid Deadlines and an Auction, and (C) Approving the Form and Manner of Notice Thereof, and (II) (A) Authorizing the Sale of Assets and (B) Granting Related Relief* (Doc. No. 88) (the "Bidding Procedures Motion").

6.      On February 5, 2026, the Court entered the Bidding Procedures Order (Doc. No. 99) authorizing the proposed procedures to govern a potential sale under 11 U.S.C. § 363. Specifically, the Bidding Procedures Motion and Bidding Procedures Order do not include the specific marketing material that represents material aspects of what is subject to bid and auction. However, during the pending period prior to the Bidding Procedures Order, counsel for the Debtor represented to the  undersigned counsel that the Bidding Procedures Motion and Bidding Procedures Order do not impact Star Island Development Corporation's rights as resort owner or the rights and responsibilities set forth in the DCCR specifically described in paragraph 3 and 4 (however it was disclosed that the management agreement would be impacted).  Based on this representation, Star Island did not object to what was disclosed as part of the Bidding Procedures Motion process.

7.      On February 4, 2026, Debtor filed its Plan of Liquidation (Doc. No. 97) ("the "Plan of Liquidation").

8.      The sale documents repeatedly invoke "free and clear" authority under § 363(f). Specifically, the Bidding Procedures Motion states that the Debtor seeks authority to sell the "Property" free and clear of interests, and it contains a full § 363(f) analysis that could be read broadly if not carefully cabined to the actual property interests being sold.

9.      The sale motion includes a broad § 363(f) discussion and requests free-and-clear authority in general terms. At the same time, the sale papers acknowledge the recorded declaration framework and the resulting easement/obligation structure tied to the "retained properties" and resort amenities.

10.      Notably, Movants had extended discussions with Debtor as a potential stalking horse bidder and did not object at the bidding procedures hearing based on representations from

Debtor's counsel that the sale process was not seeking to remove, invalidate, or impair the Recorded Declarations or the rights and obligations thereunder and that such relief would not be permissible under applicable non-bankruptcy law. Movants further understood that the "Property" being marketed was limited to the discrete 184-unit component and did not include the broader Star Island Resort or Movants' Retained Properties as disclosed in the Bidding Procedures Order.

*Materially Misleading Marketing Materials*

11.    Following entry of the Bidding Procedures Order, Debtor's marketing agent disseminated an advertisement and related marketing materials describing the offered assets in a manner that is materially inaccurate and misleading (the "Advertisement"). The Advertisement states, in pertinent part:

> "Offered Fee Simple, Free of Brand & Management Agreements… Four of the resort's 17 buildings are available for acquisition, presenting multiple investment strategies, including continued rental operations, condominium conversion, or repositioning for alternative hospitality or residential uses. **Owners and guests of the subject buildings will retain access to shared resort amenities and common facilities, while the purchaser will participate in the master association governing resort-wide operations, maintenance, and common elements.** The offering's defined scope and prime location allow buyers to leverage existing infrastructure while maintaining operational flexibility and independence." (Emphasis added).

12.    This Advertisement is misleading because it conveys that a purchaser and/or "owners and guests" of the offered buildings will "retain access to shared resort amenities and common facilities" and may operate with "flexibility and independence," when in fact (a) the amenities/common facilities and critical infrastructure are owned and maintained by non-debtor entities, (b) any access or use is conditioned by recorded covenants, restrictions, and easements (including the DCCR) and ongoing obligations thereunder, and (c) any access rights, operational permissions, and use of certain infrastructure (including ingress/egress and other common

elements) are not conveyed "free and clear" as part of the sale and cannot be assumed absent compliance with the Recorded Declarations and, where applicable, separate arrangements with Movants. Most importantly, the Advertisement completely fails to disclose that significant financial obligations attend the right of "access" promised by the Advertisement.

13.     The Advertisement further misleads prospective purchasers by suggesting that the purchaser will "participate in the master association governing resort-wide operations, maintenance, and common elements," without disclosing the, in truth, governance and operational control of resort-wide common elements and amenities rests with non-debtor parties and that the sale does not convey the broader resort property, amenities, roads, utilities infrastructure, or other non-debtor assets.

14.     It is imperative for potential purchasers to understand that:

(a) the Property is effectively landlocked absent access over non-debtor property and is subject to recorded covenants, restrictions, and easements that bind a subsequent purchaser and create a mandatory club structure;

(b) the Property contains comprehensive, heretofore unmentioned use restrictions under recorded covenants and easements, including, among many others, the following to which any mention has heretofore been omitted:

SECTION 8. USE RESTRICTION. The use of the Resort Facility or the property upon which it is located shall, subject to this Declaration, be limited to a multi-family residential timeshare plan maintained and managed by an owners association and for no other purpose whatsoever except for any successor regime or organization of common interest ownership which may arise upon the lawful termination of the timeshare plan; provided, however, that such successor regime shall be maintained and managed only for multi-family residential purposes. By way of illustration and not limitation, no portion of the Resort Facility or the property upon which it is located shall be used as a check-in desk or facility, for providing housekeeping services (except that the Declarant, its successors, assignees or designees shall have the right to store cleaning equipment and supplies in locations on site intended for such purposes) or for the purpose of operating any business or any commercial enterprise by or for the Association, or any other owner's association, or any other third party whomsoever.   A "business" or "commercial enterprise" includes but is not limited to reselling timeshare interests, selling attraction tickets, operating a commercial laundry, operating a restaurant or snack bar, operating a tourist information booth, marketing of real property interests (other than conducting tours of the Resort Facility as contemplated in Section 3 above and utilizing the model units as contemplated below), or securities, or sale of property, interests or securities.  However, this provision shall not prevent the Timeshare Developer from using one or more units of the Resort Facility as sales models; and further provided, that this provision shall not prevent the Timeshare Developer from using one or more units of the Resort Facility as offices and space for conducting all the same programs of marketing and sales as Timeshare Developer was conducting at its sales facility in the Project for a period limited

to the time that its sales facility is "not available" or "inadequate" as those terms are defined in the lease by which Timeshare Developer has acquired a leasehold interest from Declarant for such sales facility.

(c) the Property lacks any amenities being offered for conveyance in the sale;

(d) the Debtor does not own any roads, recreational and support facilities, or utilities/infrastructure (including cable, phone, internet, and related systems) that serve the Property; and

(e) none of those services, amenities, support facilities, roads, or other infrastructure will be available to the Property unless and until Movants (or other non-debtor owners) provide them subject to the recorded covenants and restrictions and any required agreements, which, among other things, will obligate the purchaser to pay the attendant financial obligations.

8

15.    By omitting these facts, the Advertisement misleads prospective purchasers into believing the offered buildings can be acquired and operated with resort-wide amenity access and operational independence, when the opposite is true. This misinformation is material, grossly misleading, and already circulating to a wide pool of potential purchasers.

16.    Movants further submit that the Advertisement appears to be part of an ongoing effort to misrepresent the nature of the Property to the marketplace. Whether intentional or not, the effect is to broadcast inaccurate information that impairs Movants' rights and operations and undermines the integrity of the sale process. Immediate Court intervention is warranted to prevent further dissemination and to require corrective written disclosures to those who have received or responded to the Advertisement.

17.    Movants did not object to entry of the Bidding Procedures Order because Debtor's counsel represented that the sale process would not be used to strip recorded covenants/easements or to suggest that broader resort amenities/common elements were being conveyed.

18.    Consistent with the sale pleadings, a template Purchase Sale Agreement (the "PSA") has been provided by Debtor's counsel. The current form of the PSA confirms that the "Star Island Resort" is a larger project than the "Property" being marketed and that the sale is not intended to convey the entire resort.

19.    The PSA as tailored by the Movant as a possible stalking horse bid defines "Star Island Resort" as the overall resort containing 17 buildings, more than 466 units and expressly distinguishes the "Property" from the overall resort. The definition makes clear the Debtor is not selling the broader resort, amenities, roads, other 282 units, other associations, or SIDC's developer retained property together with SIDC's right to build an additional 500 units at the resort. The Plan of Liquidation similarly describes the 184-unit component as a subpart of the resort.

20.     The PSA, especially with Movant's revisions, preserves the DCCR and provides that the purchaser gets exclusive possession free and clear of interests of the Timeshare Interest Owners and the Timeshare Plan, but title remains subject to the DCCR and other easements/encumbrances. But the PSA for any purchaser other than the Movant must make clear the burdens, not just the potential rights, that a prospective purchaser of the Debtor's Property will undertake.

### III.   RELIEF REQUESTED

21.     The Movants request entry of an Order from this Court with the following limited relief:

(i) **Cease and Desist.** Requiring the Debtor and its marketing agent(s) to immediately cease and desist from further using, distributing, publishing, or relying on the Advertisement (and any substantially similar marketing statements or imagery) that depicts or implies that the purchaser, owners, or guests will retain access to resort amenities/common facilities or acquire operational flexibility and independence inconsistent with the recorded covenants, restrictions, and easements and the scope of assets being sold.

(ii) **Mandatory Corrective Written Disclosures.** Requiring the Debtor and its marketing agent to advise in writing any potential purchaser who has responded to the Advertisement, registered through the marketing platform, requested diligence materials, scheduled or requested tours, or otherwise expressed interest in the offering, that:

(a) the Property is subject to recorded covenants, restrictions, and easements (including the DCCR) that bind any subsequent purchaser and establish a mandatory club structure, comprehensive use restrictions, and substantial financial obligations;

(b) but for the DCCR, the Property is effectively landlocked;

(c) the sale does not convey any portion of the broader Star Island Resort or any non-debtor amenities/common facilities;

(d) the Debtor does not own roads, recreational/support facilities, or key infrastructure/utilities (including cable, phone, internet, etc.) serving the Property; and

(e) such services/access/amenities (if any) are available only if provided by non-debtor parties and only subject to compliance with recorded covenants and restrictions and any required agreements which, among other things, will obligate the purchaser to pay the attendant financial obligations.

(iii) **Listings Corrections.** Requiring the Debtor and its marketing agent(s) to update all web listings, brochures, and marketing pages to include prominent disclosures consistent with the corrective notice above and to remove or clearly label any images of non-debtor amenities/common facilities so as not to imply they are being sold or freely available.

(iv) **Clarification of Scope.** Clarifying that (a) the "Property" subject to the bidding procedures and any contemplated sale consists only of the four buildings containing 184 units and their common areas and does not include the broader Star Island Resort or the non-debtor Retained Properties; and (b) nothing in the Bidding Procedures Order, the bidding procedures, the marketing of the Property, or any subsequent sale order shall be construed to sell the Property "free and clear" of, or otherwise invalidate, extinguish, modify, or impair the recorded covenants, restrictions, and easements (including the DCCR), except to the extent expressly adjudicated after notice and an opportunity to be heard.

**(v) Expedited Hearing.** Setting this Motion for expedited hearing and granting such other and further relief as the Court deems just and proper.

## IV.    LEGAL BASIS

### A. Corrective Relief Is Necessary Because the Advertisement Is Materially Misleading

22.    Bankruptcy courts possess inherent authority to interpret and clarify their own orders, and the Court also has authority under 11 U.S.C. § 105(a) to issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code and to implement and enforce its orders.

23.    The integrity of the § 363 sale depends on accurate disclosures to potential bidders regarding the scope of assets being sold and the material restrictions and obligations that run with the land.

24.    The Advertisement affirmatively represents that "owners and guests" will retain access to "shared resort amenities and common facilities" and that buyers can "leverage existing infrastructure" while maintaining "operational flexibility and independence." Those statements are materially misleading because they suggest the sale property as contemplated include amenity access, infrastructure availability, and governance rights that are not in fact included in the sale and that are conditioned on recorded covenants, restrictions, and easements and the rights of non-debtor parties.

25.    The Advertisement's omissions are equally material. A reasonable bidder must understand that the Property is subject to the DCCR and related recorded covenants/easements, that it lacks amenities being sold, that the Debtor does not own critical roads and infrastructure, and that use/access depends on compliance with recorded restrictions and, where applicable, separate arrangements with Movants.

26.    The Court should act promptly to halt further dissemination and to require corrective disclosures to anyone who received or responded to the misleading Advertisement.

**B. Clarification of the Bidding Procedures Is Warranted to Confirm Sale Scope**

27.    Movants further request that the Court clarify, consistent with the sale pleadings and the parties' prior representations, that the sale process authorized by the Bidding Procedures Order is limited to the discrete "Property" described in the pleadings and does not include the broader Star Island Resort or the non-debtor Retained Properties.

28.    Movants also request clarification that nothing in the Bidding Procedures Order, the bidding procedures, the marketing of the Property, or any subsequent sale order shall be construed to sell the Property "free and clear" of, or otherwise invalidate, extinguish, modify, or impair the Recorded Declarations (including the DCCR), except to the extent expressly adjudicated after notice and an opportunity to be heard. Clarifying these points now will reduce the risk of waiver arguments, title disputes, and litigation at the final sale order stage.

**WHEREFORE**, Movants respectfully request that the Court enter an order (i) granting the relief requested herein and (ii) granting such other and further relief as the Court deems just and proper.

/s/ Justin M. Luna
**JUSTIN M. LUNA, ESQ.**
Florida Bar No. 037131
jluna@lathamluna.com
Catherine. R. Choe, Esq.
Florida Bar No. 1022469
cchoe@lathamluna.com
**LATHAM, LUNA, EDEN & BEAUDINE, LLP**
201 S. Orange Ave., Suite 1400
Orlando, Florida 32801
Telephone: (407) 481-5800
Facsimile: (407) 481-5801

*Attorneys for Star Island Development Corp., The Club at Star Island, Inc., and Star Island Management Corp.*

## UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION
#### www.flmb.uscourts.gov

In Re:

STAR ISLAND VACATION OWNERSHIP, INC.,

Debtor.

Case No.: 6:25-bk-07207-GER

Chapter 11

_____/

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by CM/ECF Notice of Electronic Filing on all parties authorized to receive electronic notice in this case, and was also served by U.S. Mail (or as otherwise indicated on the service list) on any parties not on CM/ECF, including (i) the Debtor at the address listed on the creditor matrix, (ii) the Office of the United States Trustee, and (iii) any trustee or examiner appointed in this case; this 17th day of February, 2026.

/s/ Justin M. Luna
Justin Luna, Esq.
Florida Bar No.: 0037131
jluna@lathamluna.com
Catherine. R. Choe, Esq.
Florida Bar No. 1022469
cchoe@lathamluna.com
LATHAM, LUNA, EDEN & BEAUDINE, LLP
201 S. Orange Ave., Suite 1400
Orlando, Florida 32801
Telephone: 407-481-5800
Facsimile: 407-481-5801
Secondary e-mail: bknotice1@lathamluna.com
*Attorneys for Star Island Development Corp.,*
*The Club at Star Island, Inc., and Star Island*
*Management Corp.*