EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:

STAR ISLAND VACATION OWNERSHIP
ASSOCIATION, INC.,

Debtor.

Case No. 6:25-bk-07207

Chapter 11

Subchapter V

**DECLARATION OF JORDAN SCHACK IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER (I) (A) APPROVING AUCTION AND BIDDING PROCEDURES, (B) SCHEDULING BID DEADLINES AND AN AUCTION, AND (C) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (II) (A) AUTHORIZING THE SALE OF ASSETS AND (B) GRANTING RELATED RELIEF**

I, Jordan Schack, hereby declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge and belief:

1.       I am a Director at Hilco Real Estate, LLC ("Hilco"), a real estate consulting and advisory firm that evaluates, restructures, facilitates the acquisition of, and disposes of all types of real estate.

2.       I submit this declaration (the "Declaration") in support of *Motion for Entry of an Order (I) (A) Approving Auction and Bidding Procedures, (B) Scheduling Bid Deadlines and an Auction, and (C) Approving the Form and Manner of Notice Thereof, and (II) (A) Authorizing the Sale of Assets and (B) Granting Related Relief* [Docket No. 88] (including all exhibits thereto, the "Motion")[1] and, specifically, the Sale of the Property.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

3.      Except as otherwise indicated, all facts in this Declaration are based upon: (a) my personal knowledge; (b) information provided to me by the Debtor's management team and the Debtor's other advisors; (c) my review of relevant documents; and/or (d) my opinion based upon my experience.  I have been involved in the Debtor's marketing and sale process from the date of Hilco's engagement (together with the postpetition marketing and sale efforts, the "Sale Process").  I have reviewed and am familiar with the terms of the Bidding Procedures and the Stalking Horse Bid (as defined below).  I am not being compensated specifically for this testimony other than through payments that Hilco will receive in accordance with the terms of any postpetition engagement of Hilco approved by the Court.  I am authorized to submit this Declaration in support of the Debtor and the Motion.  If called upon to testify, I could and would competently testify to the facts and opinions set forth herein.

## Hilco's Qualification

4.      Hilco is a diversified real estate consulting and advisory firm that evaluates, restructures, facilitates the acquisition of, and disposes of all types of real estate both nationally and internationally.  Hilco is a subsidiary of Hilco Trading, LLC (together with its subsidiaries, "Hilco Global").

5.      Hilco has extensive experience solving complex real estate problems, including for debtors-in-possession in Chapter 11. Hilco has extensive experience solving complex real estate problems, including for debtors-in-possession in Chapter 11. Hilco has an excellent reputation as a leader in the real estate field and has an experienced team of real estate brokers and analysts. Hilco's disposition and auction team has worked with numerous clients in the accelerated sale of challenging properties nationwide and to monetize hard-to-sell assets.

1610683255.4

6.      Since Hilco was engaged, Hilco has provided consulting and real estate services to the Debtor.  During this time, I have worked with the Debtor and its other retained professionals in furtherance of these efforts.

### The Marketing Process

7.      The Property was marketed in the following print publications in February and March: Southeast Real Estate Business Magazine - March Issue (44,700 circulation), Orlando Sentinel – both months (77,800 circulation), and the Miami Herald – main/real estate news sections (12,600 circulation).

8.      The Property was marketed in the following digital publications: Florida Trend – eNewsletter + website (100,000+ impressions); Orlando Business Journal – eNewsletter (30,000 subscribers); BisNow (Orlando) – eNewsletter (11,600 subscribers); Tampa Bay Times - eNewsletter (128,000 subscribers); Central Florida Lifestyle Magazine – eBlast (20,000 subscribers); Miami Herald – Website Banner (150,000 impressions); Southeast Real Estate Business – eNewsletter  (11,200 subscribers).

9.      The Property was also listed on the following websites: Revere (40,000+ total views); CREXi.com (26,0000 impressions, 150 visitors).

10.     The Property was also marketed through paid social media channels, including LinkedIn, Twitter, Instagram, and Facebook.

11.      Hilco received over 100 direct inquiries about the Property. Almost 100 potential purchasers signed confidentiality agreements, and multiple potential purchasers toured the Property.

**Qualified Bids and the Sale of the Debtors' Assets**

12.     As of the Bid Deadline, the only Qualified Bid received was the stalking horse offer from Star Island Management Inc. at $7,000,000 (the "Stalking Horse Bid"). Accordingly, no Auction was held.

13.     The Debtor, consistent with its business judgment and the Bidding Procedures Order, determined the Stalking Horse Bid to be the Successful Bid with respect to the Property.

**A.      The Sale of Debtor's Property**

14.     With respect to the Property, I believe that the terms of the Stalking Horse Bid as set forth in that certain *Purchase and Sale Agreement* by and between the Stalking Horse Bidder and Debtor **(**the "Stalking Horse PSA"), are fair and reasonable, constitute full, fair and adequate consideration and provide reasonably equivalent value for the Property.  I also believe that the Stalking Horse Bid constitutes the highest or otherwise best offer for the Property and will provide a greater overall recovery for the Debtor's estate than would be provided by any other available alternative.

15.     In its final form, the Stalking Horse Bid includes a purchase price of $7,000,000 in cash consideration.

16.     It is my understanding that the Stalking Horse Bidder would not have entered into the Stalking Horse PSA and any agreements, documents, or other instruments entered into pursuant thereto or in connection therewith and would not want to consummate the proposed Sale Transaction (the "Property Sale"), thus adversely affecting the Debtor and its estates and its creditors, if the Property were not sold free and clear of all claims, liens and encumbrances, or if the Stalking Horse Bidder would or could be liable for any such claims, liens, and encumbrances now or in the future. A sale of the Property other than free and clear of all claims, liens, and encumbrances would yield substantially less value for the Debtor's estate.  This is my testimony not only based on conversations

with the Stalking Horse Bidder (and the many other parties with whom I spoke during the sale process), but it is also my opinion based on having been involved in, having designed, and having taken a lead role in many other distressed sales over the course of my career.  I believe that the consideration provided under the Stalking Horse Bid reflects the Stalking Horse Bidder's reliance on the relevant Sale Order to provide it with title to and possession of the Property free and clear of all claims pursuant to Bankruptcy Code sections 105(a) and 363(f).

17.     Subject to the conclusion of the currently pending adversary proceeding pursuant to section 363(h) of the Bankruptcy code, the sale of the Property has been duly and validly authorized by all necessary authority of the Debtor to consummate the transaction contemplated by the Stalking Horse PSA.  No consents or approvals, other than as may be expressly provided for in the Stalking Horse PSA, are required by the Debtor to consummate the sale of the Property.

18.     To the best of my knowledge, (i) the Stalking Horse PSA was the product of good faith, arm's-length negotiations between the Stalking Horse Bidder and the Debtor, (ii) the Stalking Horse Bidder has not engaged in any collusion with regard to the Property Sale; (iii) the Stalking Horse Bidder is not related to or an affiliate of the Debtor or any of their insiders or former insiders; (iv) the Stalking Horse Bidder is not a successor to nor has it merged or consolidated with the Debtor; and (iv) no non-debtor affiliate or current or former officer, director, employee, managing member or affiliate of the Debtor (other than as the seller) is a party to, or broker in connection with, the Property Sale.

19.     The Stalking Horse PSA was not entered into and the Property Sale is not being consummated for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtor.  All payments to be made by the Stalking Horse Bidder in connection with the Property Sale

1610683255.4

have been disclosed in the Stalking Horse PSA. Neither the Debtor nor the Stalking Horse Bidder entered the Stalking Horse PSA or is proposing to consummate the Property Sale fraudulently.

**CONCLUSION**

20. Based on my experience and personal knowledge of the Debtor's robust marketing efforts and the terms of the Stalking Horse Bid, as well as my knowledge and experience in distressed sales generally, I believe the Debtor has demonstrated good, sufficient, and sound business purposes and justifications for the approval of the sale to the Stalking Horse Bidder. I believe that entry into the Stalking Horse PSA and consummation of the sale constitutes a sound and reasonable exercise of the Debtor's business judgment, consistent with its fiduciary duties, because, among other things: (a) the terms of the Stalking Horse Bid and Stalking Horse PSA embodies the highest and best offer received by the Debtor during the bidding process for the Property; (b) the Stalking Horse Bid presents the best opportunity to maximize the value of the Property; and (c) the Property Sale will provide a greater recovery for the Debtor's estate on the Property than would any other available alternative.

21. I further believe the Property Sale as contemplated by the Stalking Horse Bid is in the best interest of the Debtor, its estate, its creditors, and other parties in interest and is necessary and appropriate to maximize the value of the Debtor's estate. Accordingly, I believe that the Court should enter the Sale Order and approve the Property Sale.

Dated: May 1, 2026

Signed by:

*Jordan Schack*

F026680ED28C49B...

Jordan Schack
Hilco Real Estate, LLC

1610683255.4