**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| IN RE: | Case No. 6:25-bk-07207-GER |
| STAR ISLAND VACATION OWNERSHIP ASSOCIATION, INC., | Chapter 11 |
| | Subchapter V |
| Debtor. | |

______________________________________/

# STAR ISLAND VACATION OWNERSHIP ASSOCIATION, INC.'S AMENDED PLAN OF LIQUIDATION


COUNSEL FOR DEBTOR

JEFFREY T. KUCERA
CARLY S. EVERHARDT
**K&L GATES LLP**
One Biscayne Tower, Suite 1900
Miami, FL 33131
-AND-
DANIEL M. ELIADES (*Admitted pro hac vice*)
PETER J. D'AURIA (*Admitted pro hac vice*)
**K&L GATES LLP**
One Newark Center, Tenth Floor
Newark, NJ 07102
-AND-
JONATHAN N. EDEL (*Admitted pro hac vice*)
**K&L GATES LLP**
300 South Tryon St., Suite 1000
Charlotte, NC 28202
-AND-
R. SCOTT SHUKER
WENDY CRAMER TOWNSEND
**SHUKER & DORRIS, P.A.**
121 South Orange Ave., Suite 1120
Orlando, FL 32801


November 6, 2026

## TABLE OF CONTENTS


Article I Summary ..... 1

Article II Definitions ..... 2

Article III Background ..... 8

Article IV Treatment of Administrative Expense Claims and Priority Tax Claims ..... 10

Article V Classification and Treatment of Claims and Interests Under the Plan ..... 11

Article VI Allowance and Disallowance of Claims and Distributions to Association Members ..... 12

Article VII Provisions for Executory Contracts and Unexpired Leases ..... 13

Article VIII Means for Implementation of the Plan ..... 13

Article IX Discharge and Effect of Confirmation ..... 14

Article X Other Provisions ..... 15

Frequently Asked Questions ..... 20

# ARTICLE I
# SUMMARY

1.01 Introduction. This is the Plan of Liquidation (the "Plan") under Subchapter V of Chapter 11 of the Bankruptcy Code of Star Island Vacation Ownership Association, Inc. (the "Debtor" or "Association"). The purpose of the Plan is to permit the Debtor to sell the Property and use the Sale Proceeds, all remaining Cash Reserves and other Property of the Estate to pay, in order, unclassified Claims; Class 1 Claims; Class 2 Claims; and Association Member Interests. To accomplish that goal, Debtor has or will do the following prior to confirmation of this Plan and Closing of the Sale:

- File and prosecute an adversary proceeding seeking judgment authorizing and approving the sale of the Property free and clear of all interests of Association Members, liens, Claims, encumbrances, and other interests pursuant to 11 U.S.C. § 363(h) and other applicable provisions of the Bankruptcy Code - a "363(h) Proceeding." The Debtor has commenced the 363(h) Proceeding, and intends to prosecute a motion for summary judgment therein on December 9, 2026;
- Undertake a marketing and sale process to identify the highest and best bid for the Property pursuant to the Sale Procedures. The Debtor has identified a Buyer for the Property for $7,000,000, which has been approved by the Court pursuant to the Order (1) Approving the Sale of Property Free and Clear of Liens, Claims, Interests, and Encumbrances, and (II) Granting Related Relief [Docket No. 168] intends to close that sale before the end of the calendar year 2026; and Begin a process to (i) determine each Association Member's Interests in the Debtor and the Property, (ii) determine any Unpaid Fees owed by each Association Member to the Debtor, and (iii) allow Association Members an opportunity to be heard on those issues and dispute the records of the Association

The Debtor contemplates that Closing of a Sale of the Property will occur after the Sale Process and 363(h) Proceeding are completed. The Debtor intends to seek confirmation of the Plan before Closing of a Sale of the Property.

After the Closing of the Sale of the Property, creditors with Allowed Unclassified Claims, Claims in Class 1, or Claims in Class 2 will receive payment from the Debtor's Cash Reserves and, if necessary, from the Sale Proceeds of the Property.

Each Holder of an Association Member Interest(other than the Debtor) will receive, after the Debtor has paid all Allowed Unclassified Claims, Allowed Class 1 Claims, Allowed Class 2 Claims, and the Wind Down Reserve Fund, a Pro Rata Share of (i) any remaining net Sale Proceeds *plus* (ii) any remaining Cash Reserves, *but less* (iii) any Unpaid Fees owed by an Association Member to the Debtor. The Debtor intends to make a single distribution for each Association Member Interest to the Primary Holder of that Interest, regardless of how many other names may be connected with that Interest. For purposes of this distribution, the Pro Rata Share shall be calculated based on the ratio that each Allowed Association Member Interest bears to the aggregate amount of all Allowed Association Member Interests. In other words, a pro rata distribution to Association Members shall be determined upon the percentage of Vacation Interests owned by WVR, PTVO, and the Vacation Interests Owners at the Property, (and Vacation Interests owned by the Debtor shall be excluded from the calculation and distribution). Depending on the volume

of Rejection Damages claims, the Debtor anticipates that the distributions to Association Members pursuant to the Plan will be approximately $448.91 per 100,000 points. Please see the Liquidation Analysis attached as Exhibit B for more detail on this projection.

In addition to unclassified claims for the payment of Administrative and certain Priority Claims, this Plan provides for one class of priority claimants, one class of non-priority unsecured creditors, and one class of Association Member Interests. Priority claimants, Holders of Class 1 Claims, and Holders of Class 2 Claims will be paid in full within 90 days of the Closing of the Sale or 30 days after all disputes related to such Claims are resolved by Final Order, whichever is later. Distributions will be made to Association Members within 90 days of the Closing or 30 days after all disputes under the Fee and Interest Process are resolved by Final Order, whichever is later.

After completion of all acts contemplated under this Plan, including Sale of the Property and all Distributions, the Association intends to dissolve pursuant to applicable law and procedures.

All creditors and Association Members should refer to Article V of this Plan for information regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

For additional information, please see the Frequently Asked Questions attached hereto as **Appendix A**.

## ARTICLE II
## DEFINITIONS

All capitalized terms in this Plan shall have the meanings ascribed to them herein. Any capitalized term used in this Plan that is not defined herein or elsewhere in this Plan shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.01 Administrative Claim means any Claim constituting a cost or expense of administration of the above-referenced bankruptcy case under 11 U.S.C. § 503(b) and that is entitled to priority under 11 U.S.C. § 507(a), including, without limitation: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the bankruptcy estate and of operating the business of the Debtor; (ii) any post-Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of business, (iii) compensation or reimbursement of expenses of professionals to the extent allowed by the 11 U.S.C. §§ 330(a) or 331, and (iv) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a final order of the Court.

2.02 Allow, Allowed, Allowance (or words of similar meaning) mean with respect to a Claim against the Debtor or an Association Member Interest that is: (a) either (i) scheduled by the Debtor in its schedules in a liquidated amount and **not** listed as contingent, unliquidated, zero, underdetermined or disputed, if a holder of such Claim or Association Member Interest that has not filed a proof of claim or interest with the Court within the applicable period of limitation fixed by the Court, (ii) asserted in the above-referenced bankruptcy case by a proof of a claim or interest

that has been timely filed, or deemed timely filed with the Court pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or any applicable orders of the Court, or late filed with leave of Court; or (iii) in the case of Association Members, either (i) not objected to by filing an Association Member Interest within the period fixed by the Bankruptcy Code, the Bankruptcy Rules and/or applicable orders of the Court, or (ii) that has otherwise been allowed by a Final Order or pursuant to the Plan. An Allowed Claim or Allowed Interest includes a previously Disputed Claim or Disputed Association Member Interest to the extent such Disputed Claim or Disputed Association Member Interest becomes Allowed when the context so requires, and shall be net of any valid setoff amount, which amount shall be deemed to have been set off in accordance with the provisions of the Plan.

2.03 Assets mean any and all property of the bankruptcy estate as defined under and included in 11 U.S.C. § 541(a), including without limitation, all legal or equitable pre-petition and post-petition interests of the Debtor in any and all real or personal property of any nature.

2.04 Association Member means a member of the Debtor. Per the By Laws, title owners of Vacation Ownership Interests are the members of the Association.

2.05 Association Member Interest means a membership interest in the Debtor. Avoidance Actions mean any and all actions and rights to recover or avoid transfers or to avoid any lien under Chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, sections 506, 510, 522, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code, and applicable state law, and the proceeds thereof, or otherwise to exercise the avoidance powers provided under the Bankruptcy Code.

2.06 Bankruptcy Code means Title 11 of the United States Code, which governs the Bankruptcy case of the Debtor.

2.07 Court or Court mean the United States Bankruptcy Court for the Middle District of Florida.

2.08 Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Court (including any applicable local rules of the United States District Court for the Middle District of Florida) as now in effect or hereafter amended.

2.09 Bar Date means January 15, 2026, as to Claims arising before the Petition Date held by entities other than governmental units, and means May 5, 2026, as to Claims arising before the Petition Date held by governmental units, such dates being the last day for timely filing proofs of such Claims.

2.10 Cash Reserves means any cash on hand at the Debtor in its operating, tax, or reserve accounts.

2.11 Bankruptcy Case means the Debtor's bankruptcy case (Case No. 6:25-bk-07207) filed in the Court.

2.12 Claim means any right to payment against the Debtor or right to an equitable remedy against the Debtor for breach of performance if such breach gives rise to a right to payment,

whether or not such right to payment or right to an equitable remedy is reduced to judgment, or whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured.

2.13 Claims Objection Deadline shall mean one-hundred eighty (180) days after the Effective Date, or such later date as may be ordered by the Court; *provided however*, that the Debtor may seek extensions of this date from the Court.

2.14 Claimant means the Holder of a Claim.

2.15 Class means a group of Claims described in Article V of this Plan.

2.16 Closing means the closing of the Sale.

2.17 Confirmation Date means the date on which the Court enters the Confirmation Order on its docket.

2.18 Confirmation Order means an Order of the Court confirming the provisions of the Plan pursuant to 11 U.S.C. § 1191.

2.19 Confirmation Hearing means the hearing at which the Court confirms the Plan.

2.20 Declaration of Covenants, Conditions and Restrictions means the a Declaration of Fairfield Orlando at Star Island dated January 24, 2000, and recorded on March 3, 2000 in the Official Records Book of Osceola County Florida at CL 2000032355, OR 1709/1701; as amended by (i) the First Amendment to Declaration recorded in Official Records Book on May 25, 2001 at CL 2001068102, OR 1877/41; (ii) the Second Amendment to Declaration recorded in Official Records Book on April 1, 2003 at CL 2003054350, OR 2222/1046; (iii) the Second Amendment to Declaration (sic) recorded in Official Records Book on July 16, 2003 at CL 2003126664, OR 2293/2576; and (iv) the Third Amendment to Declaration recorded in Official Records Book on September 17, 2003 at CL 2003171947, OR 2340/919.

2.21 Disallowed means, with reference to any Claim or Association Member Interest, (i) a Claim or Association Member Interest, or any portion thereof, that has been disallowed by a Final Order, (b) a Claim or Association Member Interest, or any portion thereof, that is expressly disallowed under the Plan, or (c) unless scheduled by the Debtor as a liquidated, non- contingent, and undisputed Claim, a Claim as to which a Bar Date has been established by the Bankruptcy Code, Bankruptcy Rules, or Final Order but no Proof of Claim has been timely filed or deemed timely filed with the Court pursuant to either the Bankruptcy Code or any Final Order.

2.22 Disbursing Agent shall mean Omni Agent Solutions, Inc.

2.23 Disputed Association Member Interest means any Association Member Interest against which an objection to the allowance thereof has been, or will be, interposed, and as to which no Order has been entered. Association Member Interest.

2.24 Disputed Claim means any Claim designated as disputed, contingent or unliquidated in the Debtor's schedules filed in connection with the Bankruptcy Case of the Debtor

or any Claim against which an objection to the allowance thereof has been, or will be, interposed, and as to which no Order has been entered.

2.25 Distribution means the distribution of cash or other property, as the case may be, in accordance with this Plan.

2.26 Distribution Address means the address for (i) a holder of an Allowed Claim as set forth in a proof of claim, as amended or supplemented, or (ii) the Primary Holder of the Association Member Interest as set forth in the Debtor's books and records or in the Fee and Interest Process. If no proof of claim is filed with respect to a particular Claim or proof of interest is filed with respect to an Association Member Interest, such defined term means the address as set forth in the Debtor's Schedules, on the master list of Association Members maintained by Debtor or as otherwise determined in the 363(h) Proceeding or Order.

2.27 Effective Date means the date upon which the Confirmation Order becomes a Final Order.

2.28 Estate means the Estate of the Debtor created pursuant to Section 541 of the Bankruptcy Code upon the commencement of the Bankruptcy Case.

2.29 Fee and Interest Process means a process to (i) determine each Association Member's Interests in the Debtor and the Property, (ii) determine any Unpaid Fees owed by each Association Member to the Debtor, and (iii) allow Association Members an opportunity to be heard on those issues and dispute the records of the Association regarding items (i) and (ii).

2.30 Final Order means an order or judgment of the Court, as entered on the docket of the Court, that has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending, or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under 11 U.S.C. § 502(j), Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedures in cases before the Court, may be filed with respect to such order shall not cause such order not to be a Final Order.

2.31 General Unsecured Claim means any Claim against the Debtor that arose or is deemed by the Bankruptcy Code or Court to have arisen before the Petition Date and that is not (i) an Administrative Expense Claim, (ii) a Priority Tax Claim, (iii) a Secured Claim, (iv) a Priority Claim, or (v) an Association Member Interest.

2.32 Holder means the legal or beneficial owner of a Claim or Association Member Interest (and, when used in conjunction with a Class or type of Claim, means the owner of a Claim or Association Member Interest in such Class or of such type).

2.33 Impaired means an Allowed Claim that is impaired within the meaning of 11 U.S.C. § 1124.

2.34 Order means an order or judgment of the Court.

2.35 Person means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated association or organization, a governmental unit or any agency or subdivision thereof, or any other Entity.

2.36 Petition Date means November 6, 2025.

2.37 Plan Expenses mean (i) all actual and necessary costs and expenses incurred after the Effective Date in connection with the administration of the Plan, (ii) all fees and expenses of the Reorganized Debtors and the Post-Confirmation Professionals as set forth in the Plan, and (iii) any U.S. Trustee Fees due after the Effective Date.

2.38 Plan Proponent means the Debtor.

2.39 Plan Supplement means the appendix of any schedules or exhibits that may be filed at least fourteen (14) days prior to the deadline for submission of Ballots to vote to accept or reject the Plan. The Plan Supplement will be filed with the Court and served on the required notice parties and shall be made available on the Debtors' claims agent's website https://cases.omniagentsolutions.com/StarIsland.

2.40 Post-Confirmation Professional means any attorneys, accountants, real estate brokers, and other professionals employed or retained by the Debtor pursuant to the Plan after the Effective Date. All Post-Confirmation Professionals shall be employed by the Debtor, in its discretion, shall not be subject to retention by the Court or the retention and fee application process, provided under, *inter alia*, Sections 327 and 331 of the Bankruptcy Code.

2.41 Primary Holder of an Association Member Interest means the Person listed as the Primary Holder for that contract in the Debtor's books and records.

2.42 Priority Claim means a Claim entitled to priority under 11 U.S.C. §§ 507(a)(3) - (7).

2.43 Priority Tax Claim means a Claim entitled to priority under 11 U.S.C. § 507(a)(8).

2.44 Property means the property governed by the Association which is a subpart of the Resort and consists of 4 buildings within the Resort containing a total of 184 units, including 148 connecting 2-bedroom units, 18 standard 2-bedroom units, and 18 3-bedroom units and their common areas more particularly described on **Exhibit "A"** attached hereto.

2.45 Property of the Estate has the meaning provided by Section 541 of the Bankruptcy Code.

2.46 Pro Rata Share means, with respect to any Distribution on account of any Allowed Claim or Allowed Association Member Interest, the ratio that the amount of such Allowed Claim or Allowed Association Member Interest bears to the aggregate amount of all Allowed Claims or Allowed Association Member Interests in the same Class.

2.47 Professional means any professional person employed in the Bankruptcy Case pursuant to Sections 327, 328 or 1103 of the Bankruptcy Code or otherwise pursuant to an Order of the Court.

2.48 PTVO means PTVO Owners Association, Inc.

2.49 Related Party means each of, and in each case in its capacity as such, current and former directors, managers, officers, and/or members of the Debtor; equity holders, including Association Members, (regardless of whether such interests are held directly or indirectly) of the Debtor; and any accountants, attorneys, Professionals, Post Confirmation Professionals, investment bankers, advisors, and any other professional retained by the Debtor during the Bankruptcy Case prior to the Effective Date.

2.50 Resort means the real property commonly known the Star Island Resort located at 5000 Avenue of the Stars, Kissimmee, Florida consisting of 17 buildings containing more than 500 units, with resort style amenities including a pool and tennis courts.

2.51 Sale means the sale of the Property.

2.52 Sale Proceeds means the aggregate cash and non-cash consideration received by the Debtor in consideration of the Sale of the Property, less the costs and expenses of the Sale as determined in the 363(h) Proceeding or otherwise per Order.

2.53 Sale Procedures means those procedures subject to the *Motion for Entry of an Order (I) (A) Approving Auction and Bidding Procedures, (B) Scheduling Bid Deadlines and an Auction, and (C) Approving the Form and Manner of Notice Thereof, and (II) (A) Authorizing the Sale of Assets and (B) Granting Related Relief* (Doc. No. 88).

2.54 Secured Claim means a Claim (i) that is secured by a lien on property in which the Debtor has an interest, which lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, or a Claim that is subject to a valid right of the Creditor of setoff against amounts owed to the Debtor; (ii) to the extent of the value of the Holder's interest in the Debtor's interest in such property or to the extent of the amount subject to a valid right of setoff, as applicable; and (iii) the amount of which (a) is undisputed by the Debtor or (b) if disputed by the Debtor, such dispute is settled by written agreement between the Debtor and the Holder of such Claim, or determined, resolved or adjudicated by Final Order.

2.55 Subchapter V Trustee means the individual serving in this Bankruptcy Case as trustee pursuant to 11 U.S.C. § 1183.

2.56 Tax or Taxes means any taxes, levies, imposts, assessments or other charges of whatever nature imposed at any time by any governmental authority or by any political subdivision or taxing authority thereof or therein, and all interest, penalties or similar liabilities with respect thereto.

2.57 Third Party means any Person that is not a Debtor.

2.58 Unpaid Fees means any amounts due from any Association Member to the Debtor.

2.59 Unsecured Claim means any Claim that is not (a) an Administrative Claim, (b) a Priority Claim; or (c) a Priority Tax Claim.

2.60 UST means the Office of the United States Trustee applicable to the Bankruptcy Case.

2.61 Vacation Interest Owners or Interest Owners means the owners of Vacation Ownership Interests other than the Debtor, WVR, and PTVO, and who are parties to corresponding contracts, with each such Vacation Interest Owner having its own corresponding contract.

2.62 Vacation Ownership Interests or Vacation Interests means any of the deeded tenant-in-common fee simple interests in the Property. The deeded interests in the property are divided amongst each Vacation Interest Owner and expressed as a fractional interest, which is denoted in a number of "points" allocated to each Vacation Interest Owner out of a total of 1,891,857,000 points.

2.63 Wind Down Reserve Fund means a cash reserve to be held in a segregated account to pay the Debtor's post-confirmation fees and expenses to administer the Plan and take the necessary legal steps to wind-down the Debtor.

2.64 WVR means Wyndham Vacation Resorts, Inc.

## ARTICLE III
## BACKGROUND

3.01 Description and History of the Debtor's Business.[1] Debtor is a not-for-profit corporation organized under the laws of the State of Florida pursuant to a Certificate of Incorporation filed with the Secretary of State of Florida, in Official Records Book at CL 2000032355, OR 1709/1759, et. seq., on January 21, 2000.

Pursuant to its By Laws, Debtor was organized and exists to administer the Fairfield Orlando at Star Island, located in Osceola County, Florida. The original By Laws were recorded on March 3, 2000, in the Official Records Book 1709 at Page 1701, et seq. of the public records of Osceola County, Florida (the "By Laws").

The Resort located at 5000 Avenue of the Stars, Kissimmee, Florida and consists of 17 buildings containing more than 500 units, with resort style amenities including a pool and tennis courts (the "Resort"). The property governed by the Association is a subpart of the Resort and consists of four buildings within the Resort containing a total of 184 units, including 148 connecting 2-bedroom units, 18 standard 2-bedroom units, and 18 3-bedroom units and their common areas.

The Declaration of Covenants, Conditions and Restrictions provide that each owner of a Vacation Interest in the Property shall be a member of the Association. Additionally, the

[1] For a detailed description of the Debtor and its operations, the Debtor respectfully refers the Court and parties in interest to *Declaration of Jeannine Rodriguez in Support of Debtor's Chapter 11 Petition and First Day Relief* (the "First Day Declaration") filed on November 7, 2025, at Doc. No. 14.

Declaration of Covenants, Conditions and Restrictions provide that "Vacation Ownership Interest", means the ownership in fee simple of an undivided interest as a tenant in common with the other Vacation Interest Owners in a phase of the Property. The undivided tenant-in-common fee interest of each Vacation Interest Owner is expressed as a fractional interest, which is denoted in a number of "points" allocated to a Vacation Interest Owner out of a total of 1,891,857,000 points.

Debtor owns 28,868,000/1,891,857,000 Vacation Interests and a concomitant share of the common elements at the Property, which comprises approximately 1.53% of the total Vacation Interests. The Association owns the Association Interest as a tenant-in-common with all other owners of the Property.

PTVO owns 896,412,500/1,891,857,000 Vacation Interests and a concomitant share of the common elements at the Property, which is approximately 47.38% of the total Vacation Interests. WVR owns 282,740,000/1,891,857,000 Vacation Interests and a concomitant share of the common elements at the Property, which is approximately 14.94% of the total Vacation Interests. The remaining Vacation Interests (683,836,500 points, approximately 36.15% of the total) are owned by approximately 9,852 parties to approximately 5,413 corresponding contracts.

On September 25, 2025, at a duly called and conducted special meeting of the Association Members (pursuant to the By Laws), the requisite number of Association Members voted to authorize the Board to file a chapter 11 bankruptcy petition for the Association to, among other things and subject to Court approval, market and sell the entire Property, free and clear of the interests of all Association Members (including non-debtor owners), with such interests to attach to the proceeds of sale, subject to distribution pursuant to Court order. At that meeting, members specifically voted to authorize the Board of Directors to (a) file a chapter 11 bankruptcy case on behalf of the Association, (b) engage professionals as the Board of Directors deems appropriate to facilitate the bankruptcy proceeding including, but not limited to, legal, accounting, and brokerage professionals, and (c) take certain actions related to the bankruptcy case.[2]

On November 6, 2025, the Debtor commenced the Bankruptcy Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Court for the Middle District of Florida (Case No. 6:25-bk-07207). The Debtor has continued in possession of the Property and is operating and managing its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Occupancy at the Property ceased on December 31, 2025; however, the Debtor is still operating to maintain and secure the Property. The Debtor has approved the retention of K&L Gates LLP and Shuker & Dorris, P.A., as its counsel.

On November 12, 2025, the Court entered a Notice of Chapter 11 Bankruptcy Case setting the bar date for creditors, other than government entities, to file claims on January 15, 2026 [Doc. No. 23].

---

[2] With regards to the September 25th special meeting of members, over 98% of the voting interests present voted in favor of the actions described in (a), (b), and (c), respectively.

On January 15, 2026, the Debtor filed a *Motion for Entry of an Order (I) (A) Approving Auction and Bidding Procedures, (B) Scheduling Bid Deadlines and an Auction, and (C) Approving the Form and Manner of Notice Thereof, and (II) (A) Authorizing the Sale of Assets and (B) Granting Related Relief* [Doc. No. 88] to establish procedures for a proposed sale.

On or around February 16, 2026, Debtor intends to file the 363(h) Proceeding, seeking judgment authorizing and approving the sale of the Property free and clear of all interests of Association Members, liens, Claims, encumbrances, and other interests pursuant to 11 U.S.C. § 363(h) and other applicable provisions of the Bankruptcy Code. The 363(h) Proceeding shall be concluded prior to Closing of the Sale of the Property.

On or around November 7, 2026, Debtor intends to initiate the Fee and Interest Process.

3.02 Liquidation Analysis. All Assets of the Debtor are to be liquidated under the Plan, and the proceeds of same are subject to Distribution to Holders of Allowed Unclassified Claims, Allowed Class 1 Claims, Allowed Class 2 Claims, the Wind Down Reserve Fund, and a Pro Rata Share to Holders of Allowed Association Member Interests. The Debtor believes that if Court converted the Debtor's Bankruptcy Case to one under Chapter 7 of the Bankruptcy Code, the aggregate amount available for Distribution would be less than is contemplated under the Plan. A copy of the liquidation analysis is attached to this Plan as Exhibit B.

Ability to Make Future Plan Payments. Debtor projects payment in full of all Allowed Unclassified Claims, Allowed Class 1 Claims, Allowed Class 2 Claims, and the Wind Down Reserve Fund. After payment of the foregoing, Debtor projects Pro Rata Share Distributions on account of each Allowed Association Member Interest, less any Unpaid Fees. The Debtor will have sufficient funds to make the required Plan payments from the Cash Reserves and Sale Proceeds. **You should consult with your accountant or other financial advisor if you have any questions pertaining to the financial information contained herein.**

3.03 Projected Recovery of Avoidable Transfers. The Debtor has analyzed its books and records and does not believe that any avoidable transfers exist that would generate a recovery for the Estate (and the Plan provides payment in full of all Allowed Claims). As such, the Debtor does not intend to pursue preference, fraudulent conveyance or other avoidable actions under Chapter 5 of the Bankruptcy Code.

## ARTICLE IV
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

4.01 Unclassified Claims. Under 11 U.S.C. § 1123(a)(1), administrative expense claims and priority tax claims (other than 11 U.S.C. § 507(a)(8) claims) are not in classes. However, treatment of any administrative expense claims that are not paid in full on the Effective Date of this Plan is set forth below.

4.02 Administrative Expense Claims. Each Holder of an Allowed Administrative Claim shall be paid as set forth herein, which is consistent with 11 U.S.C. § 1191(e). An Administrative Claim which has been properly filed pursuant to the Plan shall become an Allowed Administrative Claim if allowed by the Court. If an objection is filed, the Claim shall become an Allowed

Administrative Claim only to the extent allowed by Final Order of the Court. Each Holder of an Allowed Administrative Claim shall be paid, by the Debtor the full amount of such Holder's Allowed Administrative Claim on the later of: (i) the Effective Date or (ii) ten (10) days after such Claim becomes Allowed by Final Order, unless other treatment is agreed upon by such Holder and the Debtor as evidenced by written agreement. However, a liability incurred in the ordinary course of the Debtor's business may be paid by the Debtor in the ordinary course.

Each Person, other than a Professional, who asserts a further Administrative Claim that accrues before the Effective Date shall file with the Court, and serve on all parties required to receive notice, an application for compensation and reimbursement of expenses no later than thirty (30) days after the Effective Date of the Plan. Failure to file the notice required in the Plan timely and properly shall result in the Claim being forever barred and discharged. The Debtor estimates Allowed Administrative Expense Claims, other than Fee Claims of Professionals, to be zero as of the Effective Date.

The Subchapter V Trustee and each Professional who asserts a further Administrative Claim for fees, costs or expenses of administering the Bankruptcy Case prior to the Effective Date, including all professional compensation awards pursuant to Sections 330, 331 and 506 of the Bankruptcy Code ("Fee Claims"), shall file with the Court, and serve on all parties required to receive notice, an application for compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date of the Plan. Failure to file the notice required in the Plan timely and properly shall result in the Claim being forever barred and discharged unless the Professional was specifically excused by a Court order. The Debtor estimates Fee Claims of K&L Gates LLP, Shuker & Dorris P.A., and the Subchapter V Trustee. The Debtor cannot accurately estimate the amount of such Fee Claims due to the pending nature of the Sale Procedures, Fee and Interest Process, 363(h) Proceeding, Sale of the Property and Distribution process.

4.03 Priority Tax Claims. Each Holder of an Allowed Priority Tax Claim shall be paid in full on the later of: (i) the Effective Date or (ii) ten (10) days after such Claim becomes Allowed by Final Order, unless other treatment is agreed upon by such Holder and the Debtor as evidenced by written agreement. Payment of Priority Tax Claims that are Allowed Claims shall include interest at the rate applicable under non-bankruptcy law. The Debtor estimates Allowed Priority Tax Claims at zero as of the Effective Date.

## ARTICLE V
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

5.01 Classified Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Priority Claims | Unimpaired | Class 1 consists of all Priority Claims against the Debtor. Each Holder of an Allowed Class 1 Priority Claim shall receive in full satisfaction, settlement and release of and in exchange for such Allowed Class 1 Claim, full payment, in cash, of the Allowed Class 1 Claim amount on the later of: (i) the Effective Date or (ii) ten (10) days after such Claim |

| | | |
|---|---|---|
| | | becomes Allowed by Final Order, unless other treatment is agreed upon by such Holder and the Debtor as evidenced by written agreement. |
| Class 2 - General Unsecured Claims | Unimpaired | Class 2 consists of all General Unsecured Claims against the Debtor. Each Holder of an Allowed Class 2 Claim shall receive in full satisfaction, settlement and release of and in exchange for such Allowed Class 2 Claim, full payment, in cash, of the Allowed Class 2 Claim amount on the later of: (i) the Effective Date or (ii) ten (10) days after such Claim becomes Allowed by Final Order, unless other treatment is agreed upon by such Holder and the Debtor as evidenced by written agreement. |
| Class 3 – Association Member Interests | Unimpaired | Class 3 consists of all Association Member Interests. Each Holder of an Allowed Class 3 Interest shall receive in full satisfaction, settlement and release of and in exchange for such Allowed Class 3 Interest, after the Debtor has paid in full all Allowed Unclassified Claims referenced in Article IV, Allowed Class 1 Claims, Allowed Class 2 Claims, and the Wind Down Reserve Fund, a Pro Rata Share of (i) any remaining Sale Proceeds *and* (ii) any remaining Cash Reserves, *but less* (iii) any Unpaid Fees. For purposes of this distribution, the Pro Rata Share shall be calculated based on the ratio that each Allowed Association Member Interest bears to the aggregate amount of all Allowed Association Member Interests. The Vacation Interests owned by the Debtor shall be excluded from the calculation and distribution. |

## ARTICLE VI
## ALLOWANCE AND DISALLOWANCE OF CLAIMS AND DISTRIBUTIONS TO ASSOCIATION MEMBERS

6.01 Delay of Distribution on a Disputed Claim or Disputed Association Member Interest. No distribution will be made on account of a Disputed Claim or Disputed Association Member Interest unless such claim is allowed by a Final Order. The alleged distribution will be held in reserve pending resolution of the related claim or interest.

6.02 Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a Disputed Claim or Disputed Association Member Interest with court approval and in compliance with Fed. R. Bankr. P. 9019.

6.03 Abandonment of Claims Against Current and Former Association Members. The Debtor, in its business judgment, may abandon any claim against current Association Members) for unpaid fees or dues arrearages in excess of the projected distribution for the Association Member Interest owned by the Association Member(s) without further order of the Court. The Debtor may also offset up to an amount equal to the projected distribution for each Association Member Interest owned by such Association Member(s) against that Association Member(s)

Distribution under the Plan without further order from the Court. The Debtor, in its business judgment may also abandon claims against former Association Members for unpaid fees or dues arrearages without further order of this Court.

## ARTICLE VII
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.01 Assumption of Executory Contracts and Unexpired Leases. Debtor will assume the executory contracts on **Exhibit "B"** upon the Effective Date, unless expressly assumed through a separate Court Order on or before the Confirmation Date.

7.02 Rejection of Executory Contracts and Unexpired Leases. Subject to Section 7.01, the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed on or before the Confirmation Date. Any Person who has or asserts a Claim against the Estate by virtue of the rejection of an executory contract or unexpired lease pursuant to this Section or a Final Order entered after the Confirmation Date, shall file a Claim with the Clerk of the Court and serve same upon the Debtor and its counsel within the later of (i) thirty (30) days after the Confirmation Date, (ii) thirty (30) days after the effective rejection of the executory contract of unexpired lease; or (iii) such other date established as the deadline for the filing of such Claim in such Final Order. If such Claim is not filed by such date, it shall be forever barred from assertion against the Estate and the Debtor. Nothing in this Section shall affect the right of the Debtor or other interested party to file an objection to any Claim. Any Person who has or asserts a Claim relating to the rejection of an executory contract or unexpired lease shall, to the extent such Claim becomes an Allowed Claim, have the rights of a Holder of a Class 2 General Unsecured Claim.

## ARTICLE VIII
## MEANS FOR IMPLEMENTATION OF THE PLAN

8.01 Source of Plan Payments and Appointment of Disbursing Agent. The Plan will be funded through the proceeds the Debtor receives from the Sale of the Property and from any remaining Cash Reserves as well as any other Assets of the Debtor. The Estate will continue to exist following the Effective Date for the purpose of making disbursements pursuant to the Plan and wind down under applicable state law, including making the disbursement to all Holders of Allowed Class 3 Association Member Interests. Omni Agent Solutions, Inc. will act as the disbursing agent and have the authority to take all actions to make the Plan payments. If any Plan payment has not been deposited within 365 days, the Disbursing Agent will be authorized to deposit any unclaimed funds into the Court's unpaid funds registry. Debtor will have the authority to take all actions necessary to wind down the estate and the Disbursing Agent will have the authority to distribute any remaining funds pursuant to the terms of this Plan. Debtor may continue employing Debtor's Professionals of record following the Effective Date of the Plan to aid in the winding down of this Debtor.

# ARTICLE IX
# DISCHARGE AND EFFECT OF CONFIRMATION

9.01 Discharge. As this Plan is confirmed under 11 U.S.C. § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before the Confirmation Date, to the extent specified in 11 U.S.C. § 1141(d)(1)(A), except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in 11 U.S.C. § 1141(d)(6). The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in 11 U.S.C. § 1192; or (ii) excepted from discharge under 11 U.S.C. § 523(a), except as provided in Fed. R. Bankr. P. Rule 4007(c).

9.02 Binding Effect. Except as otherwise provided in 11 U.S.C. § 1141(d)(3), on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim or Association Member Interest against the Debtor and its respective successors and assigns, whether or not the Claim or Interest of such Holder is impaired under the Plan and whether or not such holder has accepted the Plan.

9.03 Revesting of Property of the Estate**.** Subject to the terms, conditions, and provisions of this Plan, (i) the Debtor shall be revested with all Property of the Estate on the Effective Date of the Plan, and (ii) as of the Effective Date, all such Property of the Estate shall be free and clear of all Claims and Equity Interests of Creditors and Association Members.

9.04 Injunction Against Interference with Plan. Upon the entry of the Confirmation Order, all Holders of Claims and Association Member Interests, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan.

9.05 Litigation Injunction**. EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST OR ASSOCIATION MEMBER INTERESTS IN THE DEBTOR ARE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE DEBTOR, THE ESTATE OR ANY RELATED PARTY ON ACCOUNT OF ANY SUCH CLAIMS OR INTERESTS: (A) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER; (B) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE CONCERNING THE PROPERTY, THE ASSETS OR OTHERWISE; (C) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO ANY DEBTOR; (D) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION, INCLUDING ANY LAWSUIT, THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN; AND/OR (E) TAKING ANY ACTION WHICH INTERFERES WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN; PROVIDED, HOWEVER, THAT NOTHING CONTAINED IN THE PLAN SHALL PRECLUDE SUCH PERSONS FROM EXERCISING AND/OR ENFORCING THEIR RIGHTS PURSUANT TO AND CONSISTENT WITH THE TERMS OF THE PLAN OR THE CONFIRMATION ORDER.**

9.06 Other Effect(s) of Confirmation. If not otherwise identified herein, then the effect of confirmation of the Plan is as set forth in the Bankruptcy Code and applicable law.

9.07 Tax Consequences. Creditors and Holders of Association Member Interests concerned with how the Plan may affect their tax liability are strongly urged to consult with their accountants, attorneys, or advisors.

**ARTICLE X**
**OTHER PROVISIONS**

10.01 Disbursing Agent. As this Plan is confirmed under 11 U.S.C. § 1191(a), then all Distributions hereunder shall be made by the Disbursing Agent, and the post-confirmation estate shall also pay all fees, costs and expenses of the Disbursing Agent in remitting such Distributions and the Disbursing Agent shall be authorized to reserve amounts to pay for administrative costs associated with effectuating the Plan. The Disbursing Agent shall be authorized to reserve amounts to pay for administrative costs associated with effectuating the Plan, including payment to Debtor's counsels, K&L Gates LLP and Shuker & Dorris, P.A. The Disbursing Agent shall not be required to give any bond, surety or other security for the performance of its duties unless otherwise ordered by the Court, and, in the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtor. The Court shall retain jurisdiction to hear any controversy relating to such fees, costs and expenses.

10.02 Subchapter V Trustee. As this Plan is confirmed under 11 U.S.C. § 1191(a), the service of the Subchapter V Trustee shall terminate on the Effective Date. The Debtor shall file with the Court and serve on the Subchapter V Trustee notice of the effectiveness of the Plan not later than 14 days after the Plan becomes effective.

10.03 Plan Administration. Subject to the terms, conditions, and provisions of this Plan, as of the Effective Date of the Plan, the Debtor shall continue to administer all of the Assets and Property of the Estate, and, subject to the specific provisions of the Plan, shall have the authority to exercise all of the rights and powers of a debtor in possession granted pursuant to Section 1107 of the Code in connection with managing such duties and responsibilities and administering the Assets and Property of the Estate. In addition, the Debtor shall have such other and further authority and powers as are set forth in the Plan and the Confirmation Order. Further, the Debtor, to the extent required to perform its duties and responsibilities and administer all Assets and Property of the Estate to execute such documents and perform such acts on behalf of the Debtor or the Estate as contemplated by the Plan.

10.04 Post Confirmation Duties of Debtor. On and after the Effective Date, the Debtor shall be responsible for implementation of the Plan and the administration of Property of the Estate. In carrying out its duties and responsibilities, the Debtor shall exercise prudent business judgment. Subject to the foregoing, the Debtor shall use commercially reasonable efforts to (i) maximize the Assets in order to implement the Plan; and (b) maintain, preserve, and realize value of the Assets for Holders of Allowed Claims and Allowed Association Member Interests. The Debtor shall maintain books and records related to the Debtor, Assets, and the Distributions made under the Plan pursuant to the Plan.

10.05 Post-Confirmation Employment and Compensation of Professionals. After the Effective Date, the Debtor may employ, without notice, hearing, or order of the Court, Professionals. Any Professionals employed by the Debtor to provide services after the Effective Date shall not be subject to retention by the Court or the retention and fee application process, provided under, *inter alia*, Sections 327 and 331 of the Code and applicable law. The Debtor shall receive no compensation for administering the Plan but shall be entitled to reimbursement of all expenses incurred by the Debtor after the Effective Date. All expenses of the Debtor, and all fees and expenses of the Professionals retained by the Debtor to provide services after the Effective Date, shall be paid from Property of the Estate and such right to payment shall be prior and superior to any other rights, including, without limitation, rights of the Holders of Allowed Association Member Interests.

10.06 Reservation of Rights to Modify Plan Post-Confirmation. The Disbursing Agent expressly reserves the right to request a modification of this Plan at any time after confirmation of the Plan, as long as such modification is in accordance with 11 U.S.C. § 1193, and as long as the Court confirms such modified plan, after notice and a hearing.

10.07 Post-Petition Interest on Claims or Interests. Except as required by applicable bankruptcy law, post-petition interest will not accrue on or after the Effective Date on account of any Claim or Interest.

10.08 Delivery of Distributions and Undeliverable or Returned Distributions. Subject to Fed. R. Bank. P. 9010, all Distributions to any Holder of an Allowed Claim or Association Member Interest Claim shall be made at the Distribution Address of the primary (first listed) named owner of interest. The named owner of interest is responsible for distributing the Distribution to its co-owners, if any. In the event that any Distribution to any Holder is returned as an "Undeliverable or Returned Distribution," then no further Distributions to such Holder shall be made unless and until the Disbursing Agent is notified of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder, without interest. An "Undeliverable or Returned Distribution" shall include such distributions that are: (a) undeliverable through regular United States Mail, whether such distribution is returned to the Disbursing Agent or not; (b) returned to the Disbursing Agent because the Claimant cannot locate an account number belonging to the Disbursing Agent, despite the Disbursing Agent's reasonable diligence in providing the Claimant with the bankruptcy case number, account number and his social security number; (c) returned to the Disbursing Agent because the Claimant is no longer operating and has not provided the Disbursing Agent or the Court with any assignment information; (d) returned to the Disbursing Agent because the Claimant indicates in writing that the Claimant does not wish to receive any Distribution under this Plan and therefore waives any right to payment; or (e) payments that are de minimis Distributions less than $50.

All demands for Undeliverable or Returned Distributions shall be made on or before ninety (90) days after the date such Undeliverable or Returned Distribution was initially made. Thereafter, the amount represented by such Undeliverable or Returned Distribution, including any de minimis Distribution less than $50, shall be permanently forfeited to the Disbursing Agent who shall first pay any amounts outstanding to administrative professionals for any amounts then due and owed, and then distribute the amount among the other Association Members unless distribution of such funds is not feasible from a cost-benefit perspective in the Distribution Agent's business judgment.

In such case, the Distribution Agent shall deposit the foregoing net total amounts of Undeliverable or Returned Distribution with the Court's unpaid funds registry. At such time, any Claim in respect of such Undeliverable or Returned Distribution shall be discharged and forever barred from assertion against the Debtor's estate.

No payment of less than $50 shall be made by the Disbursing Agent, and any payment required to be made hereunder that would total less than $50 shall be deemed waived.

10.09 Time Bar to Cash Payments. Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof. Requests for re-issuance of any check shall be made to the Disbursing Agent by the holder of the Allowed Claim to whom such check originally was issued. Any Claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the one hundred and ninety (190) day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall be permanently forfeited to the Disbursing Agent on behalf of the Debtor's estate. At such time, any Claim in respect of such voided check shall be discharged and forever barred.

10.10 Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

10.11 Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

10.12 Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

10.13 Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

10.14 Post Confirmation Governance. Except as otherwise provided herein or in the Confirmation Order, on and after the Effective Date, the Estate will be managed by the Debtor through its Board of Directors. The Debtor is authorized to make disbursements as provided herein and file all documents required to wind down the Estate and close the Bankruptcy Case. The Debtor may retain its existing professionals and compensate professionals without the necessity of further approval of the Court. The Debtor may also settle or compromise any Claims, Association Member Interests, or Unpaid Fees. At least two days prior to the Confirmation Hearing the Debtor shall provide budgets of the wind-down costs such that the Debtor can set-aside funds for the Wind Down Reserve Fund. The Wind Down Reserve Fund will be used for payment of fees and expenses of Debtor, including Post-Confirmation Professional fees and expenses, after the Effective Date. Any unused portion of the Wind Down Reserve Fund will be distributed subsequent to dissolution of the Debtor pursuant to the terms of this Plan.

10.15 Dissolution of Debtor. Within sixty (60) days after the final Distribution by Disbursing Agent under the Plan, the Debtor shall take the steps to dissolve the Association under

applicable law. The Plan shall constitute a plan of distribution of assets pursuant to section 617.1406 of the Florida Statutes. A copy of the Plan shall be filed with the Florida Department of State along with an officer's certificate of compliance.

10.16 Retention of Jurisdiction by the Court. The Court shall retain jurisdiction of the Bankruptcy Case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; and (iv) to resolve all issues regarding Claims, Association Member Interest objections, disputes relating to the Fee and Interest Process, and issues arising from the assumption/rejection of executory contracts or unexpired leases.

Modification of the Plan. The Debtors may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtors may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtors may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years as fixed by the court *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

10.17 Exemption from Transfer Taxes. Subject to orders entered by the Court authorizing the sale of the Property, pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition of assets contemplated by the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax. Moreover, any Sale of the Property specifically provided for by the Plan or Final Order of the Court shall be deemed to have been made under, in furtherance of, or in connection with the Plan regardless of whether the Closing occurs after the entry of the Confirmation Order and, therefore, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, or other similar tax.

10.18 Exculpation. **Neither the Debtor nor any of its board of directors, officers, advisors, Professionals, independent contractors, or agents, (collectively, "Exculpation Parties") shall have any liability to any entity for any and all claims, causes of action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances taking place or arising from and after the Petition Date and prior to the Effective Date related in any way to the Debtor, including, without limitation, any Holder of a Claim or Associated Member Interest or other person/entity**

**would have been legally entitled to assert for or on behalf of the Debtor or the bankruptcy estates and further including those in any way related to the Bankruptcy Case or this Plan, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, or any other post-petition act taken or omitted to be taken in connection with the Debtor; provided, however, the foregoing provisions of this section shall have no effect on the liability of any entity that arises primarily and directly from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct.**

RESPECTFULLY SUBMITTED this 6th day of November, 2026.
Submitted by:

*/s/ Jeffrey T. Kucera*
Jeffrey Kucera
Florida Bar No.: 68233
K&L Gates LLP
Southeast Financial Center, Suite 3900
Miami, FL 33131
Tel No.: (305) 539-3300
E-Mail: Jeffrey.kucera@klgates.com
*Attorney for the Debtor*

**Star Island Vacation Ownership Association, Inc.**

Signed by:
Jeannine Rodriguez
5055847547784E4...
By: Jeannine Rodriguez, President
Star Island Vacation Ownership Association, Inc.

APPENDIX A

**FREQUENTLY ASKED QUESTIONS**

**What Are the Debtors Attempting to Do in Chapter 11?** Chapter 11 is the principal corporate reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. As described in the Summary, the Debtor here is using Chapter 11 as a means for selling the Property as voted on and approved by the Association Members. This Plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtors, the Court may confirm the Plan as proposed by the Debtors.

**Why Is Confirmation of a Plan of Liquidation Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtors and all of their creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtors may not pay creditors as proposed in the Plan while the Debtors remain in bankruptcy.

**What Is Necessary to Confirm a Plan?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor whose claim is IMPAIRED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtors and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Court prior to the date established by the Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Section V of the Plan identifies the classes of creditors whose claims are impaired. The Debtor believes that no classes are impaired under the Plan, and therefore all classes are deemed to have accepted the plan. Therefore, no creditors are entitled to vote.

**How Do I Determine When and How Much I Will Be Paid?** The Debtor believes that the main driver of payments to the Creditors and Association Members will be the sale process. As that process has not yet been completed, the Debtor cannot determine or predict the value of distributions under the Plan. By the time of confirmation, however, the Debtor believes there will be additional information for all parties to evaluate their potential recoveries under the Plan.

# EXHIBIT A
## Property Description

**EXHIBIT A**

**Parcel Number: R11-25-28-5112-0001-0010**

An undivided **6,440,000 / 420,960,000** tenant-in-common fee simple interest in the real property commonly known as **Phase I of FAIRFIELD ORLANDO AT STAR ISLAND**, together with all appurtenances thereto, according and subject to the Declaration of Covenants, Conditions, and Restrictions for Fairfield Orlando at Star Island as recorded in Official Records Book 1709, Page 1701 et seq., of the Public Records of Osceola County, Florida, together with any and all amendments and supplements thereto (the "Declaration").

*AND*

**Parcel Number: R11-25-28-5112-0001-0020**

An undivided **7,476,000 / 490,299,000** tenant-in-common fee simple interest in the real property commonly known as **Phase II of FAIRFIELD ORLANDO AT STAR ISLAND**, together with all appurtenances thereto, according and subject to the Declaration of Covenants, Conditions, and Restrictions for Fairfield Orlando at Star Island as recorded in Official Records Book 1709, Page 1701 et seq., of the Public Records of Osceola County, Florida, together with any and all amendments and supplements thereto (the "Declaration").

*AND*

**Parcel Number: R11-25-28-5112-0001-0230**

An undivided **7,476,000 / 490,299,000** tenant-in-common fee simple interest in the real property commonly known as **Phase III of FAIRFIELD ORLANDO AT STAR ISLAND**, together with all appurtenances thereto, according and subject to the Declaration of Covenants, Conditions, and Restrictions for Fairfield Orlando at Star Island as recorded in Official Records Book 1709, Page 1701 et seq., of the Public Records of Osceola County, Florida, together with any and all amendments and supplements thereto (the "Declaration").

*AND*

**Parcel Number: R11-25-28-5112-0001-0250**

An undivided **7,476,000 / 490,299,000** tenant-in-common fee simple interest in the real property commonly known as **Phase IV of FAIRFIELD ORLANDO AT STAR ISLAND**, together with all appurtenances thereto, according and subject to the Declaration of Covenants, Conditions, and Restrictions for Fairfield Orlando at Star Island as recorded in Official Records Book 1709, Page 1701 et seq., of the Public Records of Osceola County, Florida, together with any and all amendments and supplements thereto, including, but not limited to, the "Third Amendment to the Declaration of Covenants, Conditions and Restrictions for Fairfield Orlando at Star Island" recorded on September 17, 2003 as CL No. 2003171947, and Official Records Book 2340, Page 919 (the "Declaration").

=

**EXHIBIT B**
**Liquidation Analysis**

| | Chapter 11 | Chapter 7 |
|---|---|---|
| **Assets** | | |
| a. Cash (and cash equivalents) on hand | $7,321,815.21 | $7,321,815.21 |
| b. Accounts receivable | $169,000.00 | $112,000.00 |
| c. Inventory | $0.00 | $0.00 |
| d. Office furniture, equipment, and other personal property | $0.00 | $0.00 |
| e. Machinery and equipment | $0.00 | $0.00 |
| f. Automobiles | $0.00 | $0.00 |
| g. Building and land (including the Debtor's interest in the Property) | $7,000,000 | $5,600,000.00 |
| h. Customer list | $0.00 | $0.00 |
| i. Investment property (such as stocks, bonds or other financial assets) | $0.00 | $0.00 |
| j. Lawsuits or other claims against third parties | $0.00 | $0.00 |
| k. Common elements | $0.00 | $0.00 |
| l. (Liquidation Costs excluding professional fees) | ($88,822.50) | ($750,000) |
| | | |
| ***Total Assets at Liquidation Value*** | $14,401,992.71 | $12,283,815.21 |
| | | |
| **Less:** | | |
| a. Secured creditors' recoveries | $0 | $0 |
| **Less:** | | |
| b. Chapter 7 trustee fees and expenses | N/A | $750,000 |
| **Less:** | | |
| c. Chapter 11 administrative expenses | | |

| | | |
|---|---|---|
| Chapter 11 and Subchapter V Professional Fees (Accrued but Unpaid, Estimated) | $602,638.39 | $602,638.39 |
| Other Chapter 11 Administrative Expense Claims | $2,256,204.18 | $2,256,204.18 |
| Less: | | |
| Wind Down Reserve | $100,000 | $100,000 |
| ***Estimated Recovery Amounts*** | | |
| | | |
| Funds Available to Class 1 – Priority Claims ($21,400 in alleged claims) | $11,200,566.14 | $8,332,388.64 |
| Funds Available to Class 2 – General Unsecured Claims ( $2,815,933.82 in alleged claims) | $11,179,166.14 | $5,516,454.82 |
| Funds Available to Class 3 – Association Members | $8,363,232.32 | $2,700,521.00 |
| Price per Point | $0.0045 | $0.0014 |
| Price per 100,000 point Contract | $448.91 | $144.96 |

***Explanatory Notes – Asset Valuations:***

a. This amount represents the value of cash on hand in the Debtor's bank accounts and investment accounts as of November 4, 2026. The investments held in the investment accounts are 100% liquid.

   Importantly, the Association Members authorized the Debtor to use the funds in its "Reserve Account" and in order to fund the Bankruptcy Case; however, in the context of a Chapter 7 liquidation, it is unclear if such funds would constitute property of the estate for distribution by a Chapter 7 Trustee. Similarly, the Debtor's Cash includes funds in an escrow account (the "Tax Fund") that likely would not constitute property of the estate. Thus, the Tax Fund would likely not be available for distribution in hypothetical liquidation.

b. This amount represents the amounts receivable the Debtor expects to recoup via its offsetting procedures in the Plan. The Debtor similarly assumes a Chapter 7 Trustee would also try to offset up to the projected amount of each claim when making distributions.

c. None.

d. The personal property is included in the Sale of the Property, but the exact amount is not allocated. However, the Debtor believes its personal property, other than the separately noted vehicle, has no value.

e. The machinery and equipment is included in the Sale of the Property, but the exact amount is not allocated. However, the Debtor believes its machinery and equipment, other than the separately noted vehicle, has no value.

f. The Debtor does not have any automobiles.

g. The Sale Price reflects the Purchase and Sale Agreement approved by the Court.

h. None.

i. The investment accounts are 100% liquid and reflected in “a”.

j. None.

k. None.

l. This amount includes the estimated closing costs and closing fees including for the sale of the Property.

***Explanatory Notes – Liability Valuations:***

a. One Association Member filed an alleged secured claim. The Debtor will be filing an objection to the secured claim. The Debtor does not have any secured debt.

b. $150,000 is an estimate based on the number of interested parties the Trustee would have to engage with regarding the process. This number assumes the Trustee would not undertake a sale of the Property under Section 363(h) of the Bankruptcy Code, but does assume that the Trustee would undertake actions to collect receivables.

c. Line 25 represents all accrued and estimated unpaid Subchapter V fees and Professional Fees through confirmation. Line 26 represents all accrued and estimated remaining Operating Expenses (includes real estate taxes due for the full year 2026) that will be incurred during the remaining course of the Bankruptcy Cases.

d. This amount represents the alleged priority claims that have been filed. The Debtor reserves its right to object to these claims.

(1) Values provided for this situation exclude the Tax Fund Escrow. The Tax Fund Escrow may only be used to pay taxes.

(2) This amount represents the alleged unsecured claims that have been filed. The Debtor reserves its right to object to these claims.

***Explanatory Notes – Recovery Amounts:***

a. A sale under in chapter 7 would likely result in a purchase price 15-20% less than in a chapter 11. Additionally, significant fees would need to be expended to obtain title insurance for the sale. Thus, the funds available to the creditor pool would be less.

**EXHIBIT C**
**List of Executory Contracts**

**List of Executory Contracts**

- None